Charles CRUMBLE and Doris Crumble, Plaintiffs-Appellants, Cross-Appellees,

v.

Donald BLUMTHAL and Barbara Blumthal, Defendants-Appellees, Cross-Appellants,

Joseph A. Thorsen Company and Marquardt-Robnett, Proposed Intervening Plaintiffs-Appellants, Cross-Appellees.

Nos. 75–1539, 75–1540.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1975.

Decided Feb. 9, 1977.

F. Willis Caruso, Robert G. Schwemm, Chicago, Ill., for Crumble.

James H. Canel, Chicago, Ill., for Blumthal.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and CHRISTENSEN, Senior District Judge.*

FAIRCHILD, Chief Judge.

These appeals deal with an alleged racial discrimination in the sale of real estate. The plaintiff-buyers brought this action in the district court November 2, 1973 alleging that the defendant-sellers refused to perform their contract to sell their house to the buyers because of their race, in violation of the Civil Rights Act, 42 U.S.C. § 1982,[1] and the Fair Housing Act, 42 U.S.C. § 3604.[2] Jurisdiction was alleged under 28 U.S.C. §§ 1343(3), (4) and 2201 and 42 U.S.C. § 3612. The buyers moved for a preliminary injunction and for a consolidation of the trial on the merits with the preliminary injunction hearing.

On November 16, 1973, following an evidentiary hearing, the court granted the buyers' motion for a preliminary injunction, enjoining ". . . the defendants and their agents . . . from refusing to sell the premises at 3816 Florence Avenue, Downers Grove, Illinois, in accordance with the terms of the contract for sale of real estate previously entered into by the parties. . . ." The closing was subsequently carried out.

---

* Senior District Judge A. Sherman Christensen of the United States District Court for the District of Utah is sitting by designation.

1. The Civil Rights Act of 1866, 42 U.S.C. § 1982, guarantees the following:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

2. The Fair Housing Act of 1968, 42 U.S.C. § 3604, in pertinent part provides the following:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin.

On November 21, defendant-sellers filed their answer and counterclaim. The answer alleged that defendants had terminated their contract because of dishonor of plaintiffs' earnest money check; that notwithstanding the termination, defendants had been willing to sell, and executed an escrow agreement for such purpose, which plaintiffs refused to execute. The counterclaim sought damages and other relief because of the breach by plaintiffs.

On November 29, Thorsen and Marquardt-Robnett moved for leave to intervene as plaintiffs. They are real estate brokers and in the contract for sale to plaintiffs, defendant-sellers had promised to pay them a commission. Intervenors asserted that sellers' refusal to pay the commission punished intervenors for securing housing for plaintiffs. The court denied intervention.

On January 18, 1974, the court held an evidentiary hearing on the question of damages, granted plaintiff-buyers' motion for consolidation of the trial on the merits with the preliminary injunction hearing, and offered to hear additional evidence on the merits. The court granted judgment for the buyers for their actual loss in the amount of $322.00. The court denied, however, the buyers' claim for punitive damages and attorneys' fees.

The buyers then appealed from that order. We dismissed the appeal for lack of jurisdiction because the order appealed from was not final. The defendant-sellers' counterclaim was still pending and the trial court had not made the express determination required under Rule 54(b) of the Federal Rules of Civil Procedure. This court also dismissed an appeal from the denial of intervention. Following the dismissal of the appeal, arguments were heard and evidence taken in the district court concerning the defendants' counterclaim, and on April 7, 1975 the court denied the counterclaim. The court again refused leave for the brokers to intervene.

The buyers then appealed challenging the order denying their claim for punitive damages and attorneys' fees, and the brokers appeal from denial of leave to intervene. The sellers cross-appeal challenging the orders granting the injunction, awarding the buyers actual damages, and denying their counterclaim.

## I

Plaintiff-buyers, who are black, were shown the defendant-sellers' house by an employee of one of the brokers. After an initial draft of August 13, 1973, the parties executed a contract, as modified, September 6, 1973, and an earnest money check was delivered to sellers' attorney. The check, dated September 6, was signed by plaintiff Doris Crumble, in the amount of $6,700, drawn on the Continental Bank, and payable to sellers' attorney as escrowee. On September 7, sellers' attorney wrote buyers' attorney terminating the contract and stating that the check "has been returned NSF." He had asked his bank, the Northern Trust, to obtain certification, and had received word that the check was NSF.

In fact, Mrs. Crumble had made an adequate transfer of funds from her savings account, and the NSF report arose either from a delay in recording the transfer at Continental or from a misunderstanding at Northern Trust of the reason for Continental's refusal to certify.

The buyers' attorney advised the sellers' attorney that the check was covered at all times, and there were further negotiations. Buyers tendered a certified check. An escrow agreement was prepared and signed on behalf of sellers on October 1. The sellers, however, were unwilling to have the amount of the commission disbursed to the brokers, and their attorney withdrew the escrow agreement. This action was brought several weeks later.

## II

### HOUSING DISCRIMINATION

On cross-appeal the sellers argue that the evidence is insufficient to demonstrate that they refused to sell their house because of a racial animus. They contend that the fail-

ure of the buyers' bank to certify the earnest money check was a breach which permitted them to terminate the contract and caused them to have misgivings about the buyers' ability to complete the sale. Up to and after the time of this alleged breach, the sellers claim that they did not know the buyers were black. They argue that there was no contract thereafter, that they were willing, however, to carry out the deal, but that buyers failed to execute the escrow agreement for closing. Although the sellers argue that the district court erred in compelling them to sell their house, they now appear willing to abide by the "forced sale"; but they seek damages for the cost of additional attorneys' fees, the maintenance of their house, and the loss of equity, all of which occurred as a result of the buyers' alleged breach of contract. Therefore, as we understand it, the sellers urge us to find that the court erred in finding them liable and awarding damages to the buyers, and in addition they ask us to grant their counterclaim making them whole for financial losses suffered as a result of the buyers' breach.

■ At the outset we must consider the consequence of the consolidation of the preliminary injunction hearing with the trial on the merits. See Fed.R.Civ.P. Rule 65(a)(2), 28 U.S.C. We are convinced that the district court acted within its discretion in granting plaintiffs' motion to consolidate. See *Singleton v. Anson County Board of Education,* 387 F.2d 349, 351 (4th Cir. 1967). Even though the motion was granted after the preliminary injunction hearing was completed, both parties had the opportunity to introduce new evidence and present additional arguments on the merits in the subsequent hearing. At the close of that hearing the record appeared to be sufficiently complete to have warranted a judgment on the merits. See *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.,* 463 F.2d 1055, 1057 (7th Cir. 1972). The parties were made aware early in the second hearing that the court intended to reach a final judgment and therefore they understood that this hearing was meant to be their "final day in court." The situation differed

significantly from *Puerto Rican Farm Workers v. Eatmon,* 427 F.2d 210, 211 (5th Cir. 1970).

The pertinent findings were dictated on the record, in substance, as follows.

The court found that the September 6 check was a sufficient tender of the earnest money and that it was covered by sufficient funds. The transfer of the check to Northern Trust for certification by Continental was not negotiation through normal banking channels. Sellers, however, were in good faith in relying on the information received from the Northern Trust, but the refusal by Continental to certify the check did not result in the violation of buyers' contractual obligation. The stumbling block was the refusal of the sellers to authorize the payment of the commission to the broker, and it was the knowledge of the sellers that the buyers were black which precipitated the intransigent attitude of the sellers concerning the refusal to see the commission go to the broker. Thus the breakdown of the deal had its roots in racial discrimination involving the buyers.

Although the only direct evidence as to sellers' learning the race of the buyers was testimony that in a conversation on October 4, the husband asked if they were black, and was told they were, the court considered "that was the first confirmation Mr. Blumthal had of what he had for some unascertained time prior to that learned to suspect."

■ In our view, the findings were not clearly erroneous. Under the circumstances it is reasonable to find that the sellers' decision not to pay the real estate commission to the brokers, as provided in both the real estate sales contract and the escrow agreement, caused the transaction to be terminated. There was testimony that at the time when the house was first listed for sale the sellers indicated that they preferred not to sell to black buyers. Still later, the sellers again voiced displeasure at the conduct of the brokers in securing black buyers. Finally, it was after the problem of the earnest money check had been re-

solved and negotiations between the attorneys were reopened, that the sellers must have instructed their attorney to remove the escrow agreement and terminate the transaction. As analyzed by the district court, the sellers, who were in Florida, had begun to suspect that the buyers were black before they first raised objections to paying the commission as required by the contract, and they had admittedly learned the race of the buyers before the escrow was withdrawn.

Sellers' counterclaim was based on the theory that the delivery of the September 6 check was a breach of the real estate sales contract which caused them damage including additional expense of maintenance, attorneys' fees, and the like. In briefly considering the sellers' counterclaim the district court found that the ". . . evidence is not conclusive on the issue whether the dishonoring by the bank of the buyers' earnest money check was the cause of any significant amount of the counterclaimant sellers' aggravation or pecuniary loss." That finding is not clearly erroneous, and in any event we are not persuaded that the delivery of the September 6 check was a breach of the real estate sales contract.

## III

### DAMAGES AND ATTORNEYS' FEES

The buyers argue on appeal that the district court erred in its assessment of compensatory damages suffered as a result of the sellers' refusal to sell. In addition, they contend that the court should have levied punitive damages against the sellers and awarded the buyers their attorneys' fees. The court did find that the buyers had suffered damages in the amount of $322.00. Based on the evidence in the record, we find that this award is reasonable as to out-of-pocket expense.

▉ The buyers also claim damages due to the humiliation and mental anguish they suffered as a result of the violation of their civil rights. Mr. Crumble testified that he was humiliated and embarrassed by the sellers' conduct. The district court did not specifically address this claim. Relief for such injury is contemplated by the Fair Housing Act, 42 U.S.C. § 3612(c), and our court, as well as others, has allowed recovery when it has been warranted. *Seaton v. Sky Realty Company, Inc.*, 491 F.2d 634, 636–37 (7th Cir. 1974); *Steele v. Title Realty Company*, 478 F.2d 380, 384 (10th Cir. 1973). The claim that plaintiff suffered humiliation and loss of personal esteem as a result of this type of violation of his rights is entitled to consideration and a reasonable compensation. We remand this claim to the district court for appropriate attention.

▉ Punitive damages may also be awarded under the Act. *Rogers v. Loether*, 467 F.2d 1110, 1112 (7th Cir. 1972), *aff'd sub nom., Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). The district court, without much comment, denied the buyers' petition for punitive damages. Although sellers were found to have intended to discriminate, the fact that a wrong is an intentional act does not compel an award of punitive damages as a matter of law. For various descriptions of the degree of malevolence warranting punitive damages, see *Seaton v. Sky Realty Company, Inc.*, 491 F.2d 634, 638 (7th Cir. 1974); *Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1121 (7th Cir. 1974); *Marr v. Rife*, 503 F.2d 735, 744 (6th Cir. 1974). We do not find that the district court abused its broad discretion in denying the buyers' request for punitive damages.

▉ The buyers also urge us to reverse the district court's order denying them attorneys' fees for work done by their private counsel, Mr. Zells, and by the staff attorney of the Leadership Council, Mr. Caruso. Attorneys' fees are recoverable by a successful plaintiff under both § 1982 and § 3612(c). *Marr, supra*, at 743. Section 3612(c) provides that a successful plaintiff may be awarded attorneys' fees if the ". . . plaintiff in the opinion of the court is not financially able to assume said attorney's fees." The trial court determined that the plaintiffs were "persons of better than average financial means" and therefore could not be reimbursed for attorneys' fees. A

calculation of the plaintiffs' ability to pay attorneys' fees is apparently the only factor to be considered by the court.[3] *Hairston v. R & R Apartment,* 510 F.2d 1090, 1092 (7th Cir. 1975); *Williams v. Mathews Company,* 499 F.2d 819, 829 (8th Cir. 1974), *cert. denied,* 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974).

Section 1982 does not provide specific guidelines for the recovery of attorneys' fees, and our court has not formed a standard for recovery, particularly in cases in which plaintiffs seek relief under both § 1982 and § 3612(c). *Hairston, supra,* at fn. 1. Where both statutes cover the situation, we see no reason for making an award under § 1982 on a more liberal basis than under § 3612(c). *Cf. Lee v. Southern Home Sites Corp.,* 444 F.2d 143, 148 (5th Cir. 1971). Therefore, since the plaintiffs have not demonstrated an inability to assume the expense of attorneys' fees, we find that the district court did not abuse its discretion in denying the award.

## IV

## LEAVE TO INTERVENE

The real estate brokers moved the district court for leave to intervene, claiming that under the Fair Housing Act, 42 U.S.C. § 3617, they have a cause of action against the sellers for damages. The district court denied the motion, and the brokers have appealed.

Intervention in an action may be permitted ". . . when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R. Civ.P. Rule 24(b)(2), 28 U.S.C. In deciding whether to allow intervention the ". . . court shall consider whether the interven-

tion will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* The district court did not state its reasons for denying the motion for leave to intervene, rendering a review of the court's exercise of discretion more difficult.

The brokers' claim is based on the allegations that the seller had refused to pay the real estate commission, as required in the real estate sales contract, because the brokers aided the plaintiff-buyers in the exercise of their right to buy real estate. The Fair Housing Act, 42 U.S.C. § 3617, makes it unlawful for anyone to ". . . coerce, intimidate, threaten, or interfere with any person . . . [who] . . . encourage[s] any other person in the exercise or enjoyment of, any right granted or protected by section 3604, . . . ." The Act provides that this section may be enforced by "appropriate civil action." Section 3617 apparently provides the brokers with a cause of action if they are "intimidated or interfered with" when aiding a buyer in the exercise of his right to buy or sell a house. *Cf. Smith v. Stechel,* 510 F.2d 1162, 1164 (9th Cir. 1975). This section seems clearly to include within its coverage the kind of retaliatory conduct that the sellers are accused of.[4]

In addition, the brokers' claim seems appropriate for resolution with the buyers' cause of action. The common questions of law and fact in both actions relate to the sellers' refusal to sell their house in violation of the Fair Housing Act. Both the brokers and the buyers trace the cause of their injury to the sellers' illegal conduct. See *Romasanta v. United Airlines, Inc.,* 537 F.2d 915, 919 (7th Cir. 1975), *cert. granted sub nom., United Airlines v. McDonald,* —— U.S. ——, 97 S.Ct. 523, 50 L.Ed.2d 608

---

**3.** The district court incorrectly implied that since Mr. Caruso was employed on a salaried basis for the Leadership Council he could not, under § 3612(c), receive on behalf of the Council an award for attorneys' fees. We recently held in *Hairston v. R & R Apartments, infra,* at 1092, that a charitable organization may receive attorneys' fees. The factors to be considered in making such an award are the plaintiffs' ability to pay the fee and the existence of

a lawyer-client relationship. *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.,* 517 F.2d 1141, 1148 (4th Cir. 1975).

**4.** Section 810(a) of the Act, 42 U.S.C. § 3610(a), has also been interpreted to provide a remedy for a broad class of people injured because of housing discrimination. *Trafficante v. Metropolitan Life Ins.,* 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

(1976). The general purpose of the Act, to encourage the transfer of real estate regardless of race, is well served by allowing brokers who follow the law to join aggrieved buyers in enforcing their rights.

The other requirements of permissive intervention have also been met. The brokers filed their motion for leave to intervene shortly after the buyers brought their action, thereby satisfying any objections that they had not acted in a timely manner or had caused undue delay. They took an appeal which was dismissed, perhaps improvidently. They renewed their motion and appealed again.

Finally, we can find no evidence that permitting the brokers to intervene will prejudice the rights of any of the parties. Much of the relevant evidence is already before the court. Of course, intervenors and defendant-sellers are free to offer additional evidence, but it seems probable that it will not be extensive, nor that intervention at this stage will visit a burden on the district court sufficient to be a reason in itself for affirming the denial of intervention. The fact that the substance of intervenors' federal court cause of action may in some respects parallel their cause of action on contract does not detract from the appropriateness of intervention in these circumstances.

Therefore, we find that the district court abused its discretion, and that the brokers' motion for leave to intervene should now be granted.

Insofar as the judgment appealed from failed to award plaintiffs compensatory damages for humiliation and mental anguish, it is reversed. The order denying intervention is reversed. The cause is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed. Costs on appeal are allowed to plaintiffs and proposed intervenors.