867 F.2d 527
 57 USLW 2522, 12 Fed.R.Serv.3d 1534,
14 Fed.R.Serv.3d 117
 Juan Francisco VENEGAS, Plaintiff-Appellant,
v.
Ronnie J. SKAGGS; Carthel S. Roberson, Defendants-Appellees.
Juan Francisco VENEGAS, Plaintiff-Appellee,
v.
Ronnie SKAGGS, et al., Defendants-Appellees.
Michael R. Mitchell, Applicant-in-Intervention-Appellant.
 Nos. 87-5662, 87-5684.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 2, 1988.
Decided Jan. 31, 1989.
As Amended on Denial of Rehearing and Rehearing En Banc April 4, 1989.
 
 Michael S. Bromberg, Sag Harbor, N.Y., for plaintiff-appellant.
 Robert Shannon, Long Beach, Cal., Johnnie Cochran, Los Angeles, Cal., for defendants-appellees.
 Michael R. Mitchell, Los Angeles, Cal., pro per.
 Harvey A. Schneider, Encino, Cal., for applicant-in-intervention-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, FLETCHER and FARRIS, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Attorney Michael Mitchell ("Mitchell") appeals the district court's denial of his motion to intervene in his former client's Section 1983 action. Mitchell moved to intervene in order to confirm a $406,000 lien for attorney's fees on the judgment. Juan Francisco Venegas ("Venegas"), the former client, cross-appeals the district court's ruling that Mitchell's entitlement to attorney's fees is not limited to the 42 U.S.C. Sec. 1988 award of $75,000. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291. We hold that the district court abused its discretion in denying Mitchell's intervention motion, and remand the case to the district court for a determination of the merits of Mitchell's motion to confirm a lien. We affirm the district court's ruling that Mitchell's entitlement to attorney's fees is not limited to the Sec. 1988 award and that a 40% contingent fee is reasonable in this case.[1]
 
 I.
 
 2
 Mitchell successfully represented Venegas in his Section 1983 action against Long Beach police officers for false arrest and two and one-half years' imprisonment for a murder conviction obtained using perjured evidence. Venegas retained Mitchell in September 1985, three months prior to a scheduled trial date.
 
 
 3
 The contingent fee agreement Venegas and Mitchell entered into provided Mitchell with a $10,000 retainer and a contingent fee of 40% of the "gross amount recovered," less the retainer. The agreement also required Mitchell to apply for attorney's fees under 42 U.S.C. Sec. 1988 and to deduct any such recovery from his 40 percent entitlement. It forbade Venegas from waiving Mitchell's right to court-awarded attorney fees, and allowed Mitchell's intervention to protect his interest in the fees:
 
 
 4
 Client agrees that Attorney may, at Attorney's election, and at any time, intervene as a party in the action for the sole purpose of protecting Attorney's interest in and to any attorney fee award which may be made by the trial or any appellate court.
 
 
 5
 The agreement explicitly covered only Mitchell's handling of the trial:
 
 
 6
 This agreement covers one trial only. In the event there is a mistrial or an appeal, the parties may mutually agree upon terms and conditions of Attorney's employment, but are not obligated to do so.
 
 
 7
 On January 8, 1986, Venegas consented in writing to the association of another law firm, with the attorneys to share the contingent fee 50-50.
 
 
 8
 At a jury trial Mitchell obtained a $2.12 million verdict for Venegas. After post trial motions this award entitled Mitchell to $406,000 under the contingent fee agreement. Mitchell moved for attorney's fees under Section 1988, as required by the fee agreement. The district court awarded attorney's fees of $117,000 directly to Venegas, of which $75,000 was for Mitchell's participation. The court stayed enforcement of the attorney's fees judgment pending appeal. This court has since affirmed the jury verdict and the district court's attorney's fees award. Venegas v. Skaggs, 831 F.2d 1514 (9th Cir.1987).
 
 
 9
 Venegas refused Mitchell's offer to represent him on appeal for another 10 percent of the judgment, and substituted counsel on September 14, 1986. He maintains that he "fired" Mitchell, notwithstanding the agreement's coverage of "one trial only."
 
 
 10
 On October 20, 1986 Mitchell filed his motion to intervene for the purpose of confirming a lien on the judgment for attorney's fees under the contingent fee agreement. Mitchell sought intervention as of right under Fed.R.Civ.P. 24(a)(2), and, alternatively, permissive intervention under Fed.R.Civ.P. 24(b)(2). Venegas did not oppose intervention, but claimed Mitchell's fee entitlement is limited to the court-awarded fees.
 
 
 11
 The district court denied Mitchell's motion to intervene but declined to invalidate the contingent fee agreement, leaving any dispute over the contract terms to a state court action. The court did, however, decide that the difference between the contingent fee and court-award fees is not a "windfall" to which Mitchell is not entitled.
 
 II.
 
 12
 Since we conclude that the district court erred in denying Mitchell permissive intervention, we need not decide whether Mitchell is entitled to intervention as of right. We review the denial of permissive intervention for an abuse of discretion. Willard v. City of Los Angeles, 803 F.2d 526, 527 (9th Cir.1986).
 
 
 13
 A court may grant permissive intervention under Rule 24(b) only if three conditions are met: (1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common. See Cook v. Pan American World Airways, Inc., 636 F.Supp. 693, 698 (S.D.N.Y.1986) (outlining these requirements). The district court in the case before us found that it had "jurisdiction to determine the rights of the parties under the contingent retainer agreement as ancillary to its conduct of the principal litigation." The court also did not question the timeliness of Mitchell's motion. However, the court found that the "common question of law or fact" requirement had not been met, since it was "unable to discern any relationship between plaintiff's civil rights claims and Mitchell's claim that, under California law, he is entitled to a lien for attorney's fees under a contingent fee contract."[2]
 
 
 14
 If the court had limited its rulings in Venegas's action to the merits of his Section 1983 claims, then its finding of no "common question of law or fact" might have been justified. In fact, the court chose to decide a question that was common with, and indeed central to, Mitchell's motion. In the course of hearing Venegas's action, the court decided that Mitchell's entitlement to attorney's fees is not limited under federal law to the Section 1988 award, and that a 40% contingent fee is reasonable in this case. In his motion, Mitchell in effect asked the court to answer two questions: (1) what amount of fees (if any) were due him; and (2) whether he had a right to a lien for that amount. The district court's ruling that the statutory award does not place a ceiling on Mitchell's claim to a contingent fee and that the 40% contingent fee is "reasonable" went a long way toward answering the first question posed by Mitchell's motion.
 
 
 15
 The existence of a common question of law or fact does not automatically entitle an applicant to intervene. Rather, Rule 24(b) necessarily vests "discretion in the district court to determine the fairest and most efficient method of handling a case...." SEC v. Everest Management Corp., 475 F.2d 1236, 1240 (2d Cir.1972). In this case, however, all of the considerations which guide the exercise of judicial discretion clearly weighed in favor of permissive intervention.
 
 
 16
 In exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b). Neither of the original parties in this case alleged that Mitchell's intervention would cause delay or prejudice to the adjudication of their rights. Compare California Ex Rel. State Lands Commission v. United States, 805 F.2d 857, 865-66 (9th Cir.1986) (permissive intervention proper where plaintiff has not alleged that prejudice will result from the intervention). Indeed, neither of the original parties offered any opposition at all to Mitchell's intervention motion. See Crumble v. Blumthal, 549 F.2d 462, 468-69 (7th Cir.1977) (district court abused its discretion in denying permissive intervention where the requirements for permissive intervention had been met and there was "no evidence" that intervention would prejudice the original parties).
 
 
 17
 In addition to the interests of the original parties, a court in deciding whether to permit intervention should evaluate whether the movant's "interests are adequately represented by existing parties." State of California v. Tahoe Regional Planning Agency, 792 F.2d 775, 779 (9th Cir.1986). In the case of a former attorney seeking intervention in order to secure rights under a contingent fee agreement, "[n]either of the existing parties is concerned with protecting the [attorney's] interest." Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir.1970) (holding that under such circumstances, former attorney may intervene as of right). Venegas, in fact, strenuously opposes Mitchell's claim to attorney's fees. In Venegas's view, Mitchell is entitled to at most about a sixth of the fees he demands. Since the district court chose to rule on issues central to Mitchell's claim, it should have allowed Mitchell to intervene so that he could defend his position.
 
 
 18
 Finally, judicial economy is a relevant consideration in deciding a motion for permissive intervention. See, e.g., Austell v. Smith, 634 F.Supp. 326, 335 (W.D.N.C.1986); Gordon v. Forsyth County Hosp. Authority, Inc., 409 F.Supp. 708, 718-19 (M.D.N.C.1976), aff'd in part, vacated in part, 544 F.2d 748 (4th Cir.1976). In order to decide Mitchell's motion to confirm a lien, the district court would need to decide whether the contingent fee agreement is valid under California state law[3] and, if so, whether Mitchell and Venegas intended that Mitchell enjoy an equitable lien upon the judgment. See Cetenko v. United California Bank, 30 Cal.3d 528, 531, 179 Cal.Rptr. 902, 904, 638 P.2d 1299, 1301 (1982) (under California law, a lien for attorney's fees depends upon the intention of the attorney and client in entering their fee agreement). The district court in this case is in the best position to decide these issues. No novel or difficult issues of state law appear to be at issue here, and the district court is well acquainted with the underlying litigation and the parties to this fee dispute. Further, the court has already twice involved itself in the details of Mitchell's and Venegas's fee arrangement: first, when it considered the contingent agreement in awarding attorney's fees under Section 1988, see Quesada, 850 F.2d at 540 (1983) (existence of a contingent agreement is a factor to consider in making a fee award), and second, when it found that a 40% contingent fee is "reasonable" in this case. We find the reasoning of the court in Wood v. Motorola, Inc., 587 F.Supp. 531, 532-33 (D.Haw.1984), persuasive in this case:
 
 
 19
 If this court refused to ... exercise jurisdiction [over a discharged attorney's motion for fees, the discharged attorney] would be forced to file a suit in state court. The parties to this action would then face a considerable delay and expense in having [the discharged attorney's] claim determined. They would be required to make a record that would consist of facts and arguments that are already before this court. Finally, the parties would be forced to litigate before a judge who lacks the long experience with this case, and with these parties, that this court has had. Equity, along with judicial economy, dictate that this court employ its ancillary jurisdiction to hear this motion.
 
 
 20
 We hasten to add that we are not holding that an attorney seeking to defend a contingency fee contract may intervene as of right in the underlying action. Compare Stockton v. United States, 493 F.2d 1021, 1023-24 (9th Cir.1974) (rejecting attorney's right to intervene to assert a claim for attorney's fees in tax refund suit)[4] with Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 53-54 (5th Cir.1970) (recognizing dismissed law firm's right to intervene in underlying maritime action in order to protect its contingency fee). The trial court abused its discretion when it denied Mitchell permissive intervention because it chose to address the merits of his contingency fee agreement.
 
 III.
 
 21
 Venegas contends that the district court erred in holding that 42 U.S.C. Sec. 1988 permits a court to recognize an attorney's entitlement under a contingent fee agreement that exceeds the statutory award. We review a district court's interpretation of a statute de novo. Trustees of Amalgamated Insurance Fund v. Geltmen Industries, 784 F.2d 926, 929 (9th Cir.1986).
 
 
 22
 As we recognized in Hamner v. Rios, 769 F.2d 1404, 1409 (9th Cir.1985), a statutory award under Section 1988 does not set a ceiling on an attorney's entitlement under a contingent fee contract.[5] However, a district court must review a contingent fee in a civil rights case to ensure that the contingent fee is reasonable.[6] See id. ("a contingent fee agreement should be enforced if reasonable"); see also Wilmington v. J.I. Case Co., 793 F.2d 909, 923 (8th Cir.1986) (recognizing an attorney's claim to $146,667 under a contingent fee agreement where the statutory award was $35,721.25, court expressed approval of the Ninth Circuit's position that "normally the plaintiff should be responsible for ... the contingent fee amount"); Pharr v. Housing Authority of City of Prichard, 704 F.2d 1216, 1218 (11th Cir.1983) (recognizing an attorney's claim to $9,667 under a contingent fee agreement where the statutory award was $6,570, court reasoned that a review of the district court's findings "indicates nothing unreasonable about the plaintiff's contract or the ... fee resulting therefrom"). Compare Sullivan v. Crown Paper Board Co., 719 F.2d 667, 670 (3d Cir.1983) (holding that attorneys are entitled to their full contingent fee, if reasonable, even when that fee exceeds the statutory award).
 
 
 23
 Since the legislative history of Section 1988 does not specifically address the effect of a statutory award on contingent fees, see Cooper v. Singer, 719 F.2d 1496, 1504 (10th Cir.1983) (en banc) (noting sparse congressional guidance), we must look to Congress' purposes in enacting the fee-shifting provision. Venegas suggests that Congress' purpose in enacting Section 1988 was to guarantee attorneys full compensation for civil rights work. However, the Supreme Court in Evans v. Jeff D., 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), rejected a narrow view of Section 1988's purpose. Rather, the Court concluded that Congress enacted Section 1988 in order to "promot[e] respect for civil rights.... [by adding fee awards] to the arsenal of remedies available [to a plaintiff] to combat violations of civil rights." Id. at 731-32, 106 S.Ct. at 1539-40.
 
 
 24
 We conclude that a rule limiting an attorney's fees under a contingent agreement to the statutory award would be inconsistent with Congress's goal of promoting respect for civil rights by enhancing "the arsenal" available to plaintiffs in civil rights cases. Congress has recognized that civil rights legislation can be effective only if the victims of civil rights abuses are able to attract attorneys to litigate their claims. See City of Riverside v. Rivera, 477 U.S. 561, 576-78, 106 S.Ct. 2686, 2695-96, 91 L.Ed.2d 466 (1986) (discussing legislative history of Section 1988). A rule that limits attorneys' entitlements under contingent fee agreements to statutory awards would discourage attorneys from agreeing to represent civil rights plaintiffs. As we noted in Hamner,
 
 
 25
 To hold that the statutory award is the maximum amount of fees available to counsel, notwithstanding a contingent fee arrangement providing for a higher fee, overlooks the basic nature and purpose of contingent fee agreements. Contingent fee agreements enable plaintiffs with meritorious claims but limited finances to obtain counsel, and they are set to account for the risk of nonrecovery. If attorneys begin to view statutory fees in civil rights cases as inadequate, use of the statutory award as a ceiling on fees could lead to a reluctance to represent civil rights plaintiffs, thus frustrating the intent of Congress.
 
 
 26
 Hamner, 769 F.2d at 1409 (emphasis added).
 
 
 27
 The need for private arrangements which "account for the risk of nonrecovery" is greater now than it was when we decided Hamner. When Hamner was decided, the rule in this Circuit was that courts could factor in "the risk of nonrecovery" in awarding attorney's fees under Section 1988. See White v. City of Richmond, 713 F.2d 458, 462 (9th Cir.1983). In Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a plurality held that courts may not consider the risk of nonrecovery in awarding attorney's fees under Section 1988 except possibly in exceptional cases. Justice O'Connor did not join the plurality opinion, but agreed that statutory awards should not be based on "the 'riskiness' of any particular case." Id. 107 S.Ct. at 3089. See Fadhl v. City and County of San Francisco, 859 F.2d 649, 650 (9th Cir.1988) (per curiam) (discussing the "majority" holding in Delaware Valley ).
 
 
 28
 The plurality in Delaware Valley assumed that mechanisms existed outside of statutory awards which encourage attorneys to accept risky civil rights cases. Specifically, the Court contended that its decision to eliminate "risk-enhancement" from Section 1988 awards would not compromise Congress's goal of encouraging competent counsel to represent civil rights plaintiffs because even impecunious plaintiffs may have "damages case[s] that competent lawyers would take in the absence of fee-shifting statutes." Id. 107 S.Ct. at 3086-87 (emphasis added). If we accepted Venegas's argument that contingent fees may never exceed statutory awards, we would in effect be eliminating this category of civil rights cases.
 
 
 29
 The Supreme Court's holding on waivers of attorney's fees awards under Sec. 1988 also supports our view that Sec. 1988 does not place a ceiling on an attorney's entitlement under a contingency fee agreement. The Court in Evans v. Jeff D., 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), rejected a general proscription against waiving attorney's fees under Sec. 1988 as a condition of settlement of Sec. 1983 suits. If courts must respect the freedom of clients and attorneys to agree that the attorney will receive no Sec. 1988 fee in order to achieve a satisfactory Sec. 1983 settlement, fairness requires that we respect the freedom of clients and attorneys to agree to a contingency fee in excess of a Sec. 1988 award. We should provide wide parameters to the negotiations between attorneys and their clients. See Evans, 475 U.S. at 732-34, 106 S.Ct. at 1540. As with fee waivers, automatic approval is not required. Instead, the district court may only enforce reasonable fee agreements.
 
 
 30
 Venegas argues that contingent fees in excess of the statutory awards are "windfalls" for civil rights attorneys. It is clear Congress intended that attorneys fees in civil rights cases would be "adequate to attract competent counsel, but [would not be] windfalls to attorneys." S.Rep. No. 94-1011, 94th Cong., 2nd Sess. at 6, U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913. The Second Circuit has limited attorneys' entitlements under contingent agreements to the statutory awards in order to prevent "windfall recoveries for successful attorneys." Wheatley v. Ford, 679 F.2d 1037, 1041 (2d Cir.1982). See also Sargeant v. Sharp, 579 F.2d 645, 648 (1st Cir.1978) (suggesting that "courts are ... rightly concerned that windfall fees be avoided and that an otherwise reasonable fee not be made excessive by virtue of a fee agreement"). The fear of windfall recoveries, however, is unfounded for two reasons. First, there is no reason to believe that civil rights plaintiffs will routinely compromise their own interests by agreeing to one-sided contingent fee agreements. See, e.g., Pharr, 704 F.2d at 1218 (courts should give deference to a contingent fee contract because it "represents [the attorney's and client's] notion of what constitutes a reasonable fee"); Hagge v. Bauer, 827 F.2d 101, 111 (7th Cir.1987) ("Our latest decisions have advanced the notion that the contingent fee arrangement should carry considerable evidentiary significance in ascertaining a reasonable fee award"). Second, by reviewing contingent fee agreements for reasonableness, district courts in effect protect civil rights plaintiffs from "windfall recoveries" by their attorneys.[7]
 
 IV.
 
 31
 In this case, we find that the district court did not err in ruling that the contingency fee agreement is reasonable. We review a district court's award of reasonable attorney fees under Section 1988 for an abuse of discretion. See, e.g., Miller v. Los Angeles Co. Bd. of Education, 827 F.2d 617, 619 (9th Cir.1987) (involving 42 U.S.C. Sec. 1988 and 42 U.S.C. Sec. 2000e-5(k)). The same standard applies where a district court reviews the reasonableness of a contingent fee that exceeds the statutory award. See Krause v. Rhodes, 640 F.2d 214, 218-19 & n. 5 (6th Cir.1981) (applying an abuse of discretion standard to a district court's review of a contingent fee agreement, the court reasoned that "[w]hile the language of Sec. 1988 [granting district court judges discretion to award a reasonable attorney's fee] does not expressly empower a district court to limit fees derived under a private agreement between the prevailing attorney and his client, it is indicative of the extensive powers available to district judges in supervising attorney's fees in civil rights cases").
 
 
 32
 The district court found that Mitchell's contingent fee is reasonable because it reflected the risk of nonrecovery he assumed in accepting this case.[8] We find no basis in the record to support a ruling that the district court abused its discretion in making this finding. Venegas has presented no evidence suggesting that a 40% contingent fee is not standard in California for civil rights cases, or that his particular case posed an unusually low risk for a civil rights case. Moreover, we previously recognized that this case turned on the resolution of a "difficult question of credibility." Venegas v. Wagner, 831 F.2d 1514, 1519 (9th Cir.1987). Compare Hagge v. Bauer, 827 F.2d at 112 (upholding statutory award equivalent to a 40% contingency fee in a civil rights case even though the case involved "settled precedent, and no defense of immunity").
 
 CONCLUSION
 
 33
 We conclude that the district court abused its discretion in denying Mitchell's motion to intervene. We remand to the district court to determine the merits of Mitchell's motion to confirm a lien. We affirm the district court's ruling that Mitchell's entitlement to attorney's fees is not limited to the Sec. 1988 award and that a 40% contingent fee is reasonable in this case.
 
 
 34
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 The district court reviewed the 40% contingency fee for reasonableness, even though Mitchell is at most entitled to half of the fee because he agreed to share the fee with other attorneys who participated in the case
 
 
 [2]
 The district court also indicated that it refused Mitchell's motion to intervene because "California courts have uniformly held that a discharged attorney may not intervene in his client's lawsuit to establish or enforce his lien." Since "[i]t is wholly clear that the right to intervene in a civil action pending in a United States District Court is governed by Rule 24 and not by state law," 7C Wright, Miller & Kane, Federal Practice and Procedure Sec. 1905, p. 240 (2d ed.1986), the court should not have relied on California law. The court also suggested that it was declining to decide Mitchell's motion because the "judgment is on appeal [and Mitchell's motion] is [thus] premature." Since the judgment has been affirmed, this reason is no longer valid
 
 
 [3]
 Venegas challenges the contingent fee agreement on a number of state law grounds, including fraudulent representation
 
 
 [4]
 In Stockton, the court noted that it was not deciding "whether as a general proposition an attorney's interest in a fee is a sufficient interest to call for intervention of right under Rule 24(a)(2)." 493 F.2d at 1024
 
 
 [5]
 In Blanchard v. Bergeron, 831 F.2d 563, 564 (5th Cir.1987), the Fifth Circuit held that a Section 1988 award may not exceed the fee provided for in the plaintiff's contingency fee agreement with his attorney. In Quesada v. Thomason, 850 F.2d 537, 543 (9th Cir.1988), we held that a contingency fee agreement cannot justify lowering an otherwise reasonable Sec. 1988 fee. The Supreme Court in Blanchard held that, while a contingency fee agreement is a relevant 'factor' in determining a reasonable award under Section 1988, '[t]he trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.' Blanchard v. Bergeron, 57 U.S.L.W 4191, 4193 (2/21/89)
 
 
 [6]
 It is settled that, since "courts retain supervisory power over the attorney-client relationship [and since] fees are central to that relationship, ... contingent fee arrangements are ... subject to the courts' supervision." Cooper v. Singer, 719 F.2d 1496, 1505 (10th Cir.1983). See Starr v. Bowen, 831 F.2d 872, 874 (9th Cir.1987); Hamner, 769 F.2d at 1409. See also Hoffert v. General Motors Corp., 656 F.2d 161, 165 (5th Cir.1981); Allen v. United States, 606 F.2d 432, 435-36 (4th Cir.1979); Dunn v. H.K. Porter Co. Inc., 602 F.2d 1105, 1108 (3rd Cir.1979); ABA Canons of Professional Ethics, Canon 13 (1908) ("A contract for a contingent fee ... should always be subject to the supervision of a court, as to its reasonableness")
 
 
 [7]
 Where the district court concludes that a contingent fee that exceeds the statutory award is reasonable, the plaintiff may be required to pay the difference between the 1988 award paid by the defendant and the contingent fee. Hamner, 769 F.2d at 1409. The plaintiff's attorneys are not entitled to both the statutory award and the full amount of the contingent fee
 
 
 [8]
 In Hamner, we recognized that a court has the discretion to consider a number of other factors in determining the reasonableness of a contingent fee, including the gap between the statutory award and the contingent fee and the quality of the attorneys performance. Hamner, 769 F.2d 1450, 1409-10. See also Sears v. Atchison, Topeka & Santa Fe Ry. Co., 779 F.2d 1450, 1456 (10th Cir. 1985) (considering attorney's length of participation, level of performance, success, and level of finances as well as "risk of nonrecovery" in deciding reasonableness of a contingent fee in a civil rights case)