Mary STEVENSON, an individual, Plaintiff,

v.

Richard ROMINGER, the Secretary of Agriculture; United States Department of Agriculture; United States Forest Service, Defendants.

No. CY–95–3034–AAM.

United States District Court, E.D. Washington.

Sept. 28, 1995.

Michael E. Haglund, Haglund & Kirtley, Portland, Oregon, for plaintiff.

James R. Shively, Assistant United States Attorney, Spokane, Washington, and Thomas L. Halkowski, Department of Justice, Environment & Natural Resources Division, Washington, DC, for federal defendants.

Lawrence Watters, White Salmon, Washington, for intervenor-defendant Columbia River Gorge Commission.

Gary K. Kahn, Reeves, Kahn & Eder, Portland, Oregon, for intervenor-defendant Friends of the Columbia Gorge.

## ORDER PERMITTING INTERVENTION

McDONALD, District Judge.

Plaintiff owns property which is subject to restrictive zoning regulations promulgated in connection with the Columbia River Gorge National Scenic Area Act. Under the provisions of this act, plaintiff invited the federal government to purchase her property for fair market value. She contends that the United States Forest Service violated the requirements of the act by offering a sum for her property that was dramatically below fair market value.

Currently before the court are two motions to intervene. Both the Friends of the Columbia Gorge and the Columbia Gorge Commission seek intervention as a matter of right, or, in the alternative, permissive intervention. (*Friends of the Columbia Gorge* Ct.Rec. 28; *Columbia Gorge Commission* Ct. Rec. 36). For the reasons set forth below, the court is granting both of these distinct motions for intervention.

## BACKGROUND:

The Columbia River Gorge National Scenic Area Act, 16 U.S.C. §§ 544–544p, was enacted into law in 1986 for the purpose of enhancing the scenic, cultural, recreational, and natural resources of the Columbia River Gorge, while aiming at the same time to protect and encourage economic growth in the area. *See* 16 U.S.C. § 544a. To accomplish this, the Act created the Columbia River Gorge National Scenic Area and ratified an interstate compact between Washington and Oregon which regulates land use and development activities within the scenic area. The Scenic Area is divided into three basic land classifications: Special Management Areas (SMAs), which are administered by the United States Forest Service; General Management Areas (GMAs), which are administered by the Columbia River Gorge Commission; and exempt urban areas.

The Act calls for the creation of the Columbia River Gorge Commission ("Commission"). This thirteen-member commission is comprised of three Oregon residents appointed by the Governor of Oregon, three Washington residents appointed by the Governor of Washington, one resident from each of the six counties within the Scenic Area, and one ex officio, nonvoting member who is an employee of the Forest Service.

Under 16 U.S.C. § 544f, the Forest Service is to conduct a resource inventory and recreation assessment for the SMAs and to develop land use designations for the SMAs based on those studies. The Commission is to complete a resource inventory, economic opportunity study, and recreation assessment for the Scenic Area. The Commission must also develop land use designations for the use of non-federal lands within the Scenic Area

based on the results of its resource inventory. After all studies are completed, the Commission is required to adopt a final management plan for the entire Scenic Area which incorporates without change the results of the Forest Services' management plan.

Once the final management plan is adopted, it is forwarded to the six counties in Washington and Oregon which fall within the Scenic Area. They must adopt land use ordinances consistent with the terms of the plan. The counties' proposed land use ordinances for GMAs are reviewed for consistency by the Commission. Land use ordinances for SMAs are initially reviewed by the Commission, but final concurrence must be given by the Secretary of Agriculture. The Act directs the Commission to make and publish a land use ordinance for any county which fails to adopt such ordinances themselves.

Owners of land in SMAs may take certain steps to avoid the rigors of the restrictive ordinances adopted with respect to these areas:

> Any ordinance adopted pursuant to this section shall not apply to any parcel or parcels of land within a special management area if, after the date such ordinance has been adopted, three years have elapsed after has made a bona fide offer to sell at fair market value or otherwise convey such parcel or parcels to the Secretary, unless the affected landowner agrees to an extension of the three year period: *Provided,* That an offer shall not be considered bona fide if the landowner refuses consideration equal to the fair market value as appraised in accordance with the Uniform Appraisal Standards for Federal Land Acquisitions (Interagency Land Acquisition Conference, 1973). Lands for which an ordinance is suspended pursuant to this subsection shall be subject to the relevant scenic area land use ordinance pursuant to section 544e of this title.

16 U.S.C. § 544f(*o*). Thus, SMA landowners can force the government either to pay fair market value for their land or suspend the application of the SMA land ordinance.

## FACTS: [1]

On October 15, 1991, the Columbia River Gorge Commission adopted the *Management Plan for the Columbia River Gorge National Scenic Area.* After Klickitat County refused to adopt a Scenic Area ordinance that the Secretary of Agriculture and the Commission would certify as consistent with the Management Plan, the Commission promulgated such an ordinance for Klickitat County in August, 1993.

Plaintiff owns 21.6 acres of land within the SMA of the National Scenic Area. On May 26, 1994, plaintiff offered to sell her property to the Secretary of Agriculture for fair market value, as permitted by 16 U.S.C. § 544f(*o*). Plaintiff informed the Secretary that, in her opinion, the fair market value of her property is $400,000. On January 23, 1995, the Forest Service offered to purchase plaintiff's 21.6 acres for $108,000.

Plaintiff seeks a declaration from this court that the Forest Service's valuation of plaintiff's property violates the Act because it does not represent the actual fair market value of the property.

## DISCUSSION:

### I. Legal Standard: Intervention

#### A. Intervention of Right

The requirements for intervention of right are set forth in Fed.R.Civ.P. 24(a):

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Ninth Circuit reviews de novo a district court's denial of a motion to intervene as of right, and construes Rule 24(a) broadly in

---

**1.** The following recitation of facts is taken from the plaintiff's complaint. These facts are considered by the court solely for purposes of this motion; the parties may challenge the veracity of these facts in any future dispositive motion or trial.

favor of applicants for intervention. *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993). The Ninth Circuit has broken down intervention of right into four distinct requirements:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Sierra Club v. United States E.P.A.,* 995 F.2d 1478, 1481 (9th Cir.1993); *Greene,* 996 F.2d at 976.

## B. Permissive Intervention

■ Fed.R.Civ.P. 24(b) sets out the requirements of permissive intervention:

> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

A district court's ruling regarding permissive intervention is reviewed for abuse of discretion. *Greene,* 996 F.2d at 978. A court may grant permissive intervention only if three conditions are met:

> (1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common.

*Venegas v. Skaggs,* 867 F.2d 527, 529 (9th Cir.1989), *aff'd,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *Greene,* 996 F.2d at 978.

## II. MOTION TO INTERVENE BY FRIENDS OF THE COLUMBIA GORGE

■ The proposed intervenor-defendant, Friends of the Columbia Gorge ("FOCG"), is a non-profit Oregon association. Its members use the National Scenic Area for recreation; many members live within the Scenic Area boundaries. FOCG seeks to intervene on the grounds that if the plaintiff is successful in challenging the methodology used by the Forest Service to appraise Scenic Area land, fewer parcels may be acquired by the Forest Service. FOCG anticipates that, in that event, many Scenic Area parcels which are currently SMA regulated will lose their classification as SMA, since the Forest Service will not be able to purchase them. FOCG maintains that if fewer SMA parcels are acquired, its members' enjoyment and use of Scenic Area land will be threatened.

The plaintiff opposes FOCG's motion to intervene as a matter of right. While Stevenson does not challenge the timeliness of FOCG's motion, she asserts that FOCG cannot demonstrate a protectable interest of sufficient magnitude to warrant intervention. She additionally argues that even if FOCG can demonstrate a sufficient interest, it has failed to show that its interest will not be adequately represented by the current parties in the suit. Stevenson also sets forth several grounds on which this court should deny permissive intervention.

### A. Intervention as of Right

#### 1. Significantly Protectable Interest

FOCG asserts that its members have a very significant recreation and use interest in the Scenic Area land which entitles it to intervention. It notes that the acquisition process in the Act is designed to obtain those parcels of land which contain sensitive resources which require special protection. The implementation of the acquisition process on a parcel-by-parcel basis has a direct impact on the FOCG's interest, because it determines how much land the government can protect.

While the plaintiff acknowledges FOCG's general interest in the Forest Service's strategy in the implementation of the Act's land acquisition program, she contends that this interest is not implicated in this litigation. Rather, she narrowly characterizes the nature of her action as a simple question of

whether or not the Forest Service followed the mandatory standards imposed by the Act in determining the fair market value of her particular parcel of land. In her view, the Forest Service's execution of its land acquisition plan is not at issue in this case because she has not sought to raise it.

The court finds, however, that the plaintiff's depiction of the issues involved in this litigation is overly limited in scope. While Stevenson may choose to frame her claim narrowly, this does not preclude the possibility that its resolution may require an exploration of the purpose and design behind the entire Columbia River Gorge National Scenic Act. That such appears to be the situation in this case is revealed through a cursory examination of the government's motion to dismiss, and plaintiff's response thereto. The government has moved to dismiss Stevenson's claim pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that 16 U.S.C. § 544f(o ) (Section 8(o ) of the Act) neither requires the Secretary of Agriculture to make an offer to purchase her property, much less to make an offer at a particular amount. (Ct.Rec. 25 at 13). One of Stevenson's arguments in response to the government's motion is that such an interpretation of Section 8(o ) would effectively write it out of the Act. (Ct.Rec. 34 at 8–9). Stevenson's response to the government's argument thus shows that it is likely that this case will require more than a mere determination of the fair market value of the plaintiff's property.

The court's interpretation of Section 8(o ) will undoubtedly bear directly on how the Forest Service proceeds with its land acquisition program, and this, in turn, will determine to what extent the Scenic Area is available for the uses of the FOCG. Moreover, even considering only the plaintiff's particular parcel, FOCG cogently observes that the court's prospective determination of this property's value will determine whether or not it remains classified as SMA and how much money is available for the Forest Service's purchase of other property. Thus, FOCG arguably has an interest in the value of plaintiff's particular property.

Aside from her argument that the FOCG's interest does not relate to the subject of this litigation, the plaintiff argues that this interest is not "protectable." In support of her argument, plaintiff cites *Portland Audubon Soc. v. Hodel,* 866 F.2d 302 (9th Cir.1989), *cert. denied,* 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989). In that case, environmental advocacy groups sued the Interior Department to enjoin sales of old-growth timber, claiming that logging the old trees would threaten the habitat of the northern spotted owl. A logging advocacy group and some logging contractors were allowed to intervene on some of the claims but not the claim under the National Environmental Policy Act. The Ninth Circuit affirmed the denial of their motion to intervene in the NEPA claim on the ground that they lacked a protectable interest. Specifically, the Ninth Circuit held that the intervenors' claim, which centered around purely economic interests, had no relation to the interests intended to be protected by the statute at issue, NEPA. *Id.* at 309. Accordingly, the court concluded that they had no protectable interest justifying intervention as of right. *Id.*

Stevenson similarly asserts that Section 8(o ) of the Act provides no protection for any interest FOCG might have in her claim against the defendants. She maintains that Section 8(o ) is intended solely to protect the property rights of a class of Scenic Area landowners; the FOCG's interest is not covered by this section.

This argument completely misstates the Ninth Circuit's holding in *Portland Audubon* and overlooks the clear Congressional statement of purpose in the Act. In *Portland Audubon,* the Ninth Circuit did not single out a particular section of NEPA; rather, the court found that this statute did not confer protection on the interest asserted by the intervenors. Stevenson, however, wishes this court to consider Section 8(o ) in isolation from the remainder of the statute.

Such a position is also contradicted by 16 U.S.C. § 544a, which provides in pertinent part:

The purposes of *sections 544 to 544p* of this title are—

(1) to establish a national scenic area to protect and provide for the enhancement of the *scenic, cultural, recreational, and natural resources of the Columbia River Gorge;* ....

The express language of this statute indicates that 16 U.S.C. § 544f(*o* ) (Section 8(*o* )) must be read in conjunction with these purposes. These purposes, in fact, are identical to the interests asserted by FOCG.

It is not disputed that FOCG was significantly involved in the enactment of the Act and that since that enactment, FOCG has been actively involved in every aspect of the administration of the Scenic Area. The Ninth Circuit has found significant protectable interests in such circumstances. In *Washington State Building & Construction Trades v. Spellman,* 684 F.2d 627 (9th Cir. 1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), the court held that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported. In *Idaho v. Freeman,* 625 F.2d 886 (9th Cir.1980), the court held that the National Organization for Women had the right to intervene in a suit challenging procedures for ratification of the proposed Equal Rights Amendment to the Constitution of the United States, a cause which that organization had championed.

The bottom line is that the express language of the Gorge Act clearly indicates that the interests asserted by the FOCG are protected. Therefore, the plaintiff's claim that intervention of right must be precluded because there is no significantly protectable interest is meritless.

### 2. Impairment of Interest

Stevenson argues that the interests asserted by FOCG will not be affected by this court's resolution of her claim under Section 8(*o* ). FOCG notes in response that if this court interprets this section in a manner that results in less public lands being acquired and less Scenic Area land retaining its SMA classification, then its interests will certainly be adversely affected. The court agrees. As noted above, this court's disposition of this case is likely to require a ruling as to the effect of 16 544f(*o* ), which will affect the way the Forest Service implements its land acquisition program.

### 3. Adequacy of Representation

Plaintiff also objects to FOCG's motion for intervention on the ground that the Forest Service will advance any argument which the FOCG may contemplate. Stevenson anticipates that *both* the Forest Service and FOCG will argue that judicial review of this matter is inappropriate, and that $108,000 represents the fair market value of her property.

In determining the adequacy of representation, the court must consider several factors, including whether the Forest Service will undoubtedly make all of the intervenor's arguments, whether the Forest Service is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected. *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir.1983). "The applicant is required only to make a minimal showing that representation of its interests may be inadequate." *People of State of California v. Tahoe Regional Planning,* 792 F.2d 775, 778 (9th Cir.1986) (citation omitted).

FOCG asserts that it has had numerous discussions with the Forest Service regarding the proper interpretation of § 8(*o* ) of the Act. FOCG represents that although it has put forth a proposed policy as to how § 8(*o* ) should be implemented, the Forest Service has failed to adopt either FOCG's policy or any other policy. The Forest Service and FOCG have apparently had differences of opinion regarding the implementation of this statutory section.

On that basis, FOCG has made a showing sufficient to sustain its minimal burden on this element. The court also finds that FOCG represents a perspective which is distinct from that of the Forest Service. It represents the viewpoint of those directly drawing upon those resources of the Columbia River Gorge which this Act is designed to protect.

## III. MOTION TO INTERVENE BY CO-LUMBIA GORGE COMMISSION

As noted above, the Columbia River Gorge National Scenic Area Act authorized the formation of the Columbia Gorge Commission to implement a management plan for development of the Gorge in conjunction with the Forest Service. The Commission was required to incorporate the Forest Service's designations made with respect to the SMAs.

The Commission's motion to intervene is similar to that brought by the Friends of the Columbia Gorge in that it emphasizes the significance of 16 U.S.C. § 544f(o). The Commission's position is that this suit will likely require the court to interpret § 8(o) of the Act. The court's decision, it maintains, has the potential to disrupt the Forest Service's land acquisition program and consequently the underlying management plan prepared by the Forest Service and the Commission.

### A. Intervention as of Right

### 1. Significantly Protectable Interest

The Commission asserts a protectable interest in this litigation by virtue of the fact that it is charged with the task of representing the interests of the Washington and Oregon citizens who are directly affected by the management plan. The Commission further notes that the Act requires it to monitor activities in the Gorge and consider changes in the plan if necessary.[2]

Stevenson argues that the Commission's role as plan administrator does not provide it with a significantly protectable interest in this litigation. She claims that the Commission has failed to allege any cognizable inter-est in intervention, because it has not shown that this court's decision in this action will directly affect its own duties and powers under the Act. *People of State of California v. Tahoe Regional Planning Agency*, 792 F.2d 779, 782 (9th Cir.1986), *citing*, *Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir.1977).

In *Tahoe Regional Planning*, California brought suit against the Tahoe Regional Planning Agency ("TRPA") challenging its regulatory plan for achieving environmental goals. TRPA had developed the plan pursuant to a California–Nevada Tahoe Regional Planning Compact. The plaintiffs asserted that TRPA's regional plan violated that compact. Three individuals sought to intervene to challenge the district court's jurisdiction to hear the suit and to argue that TRPA was no longer legally constituted. These individuals owned property in Douglas County, Nevada and the Tahoe Basin, and two of them were Douglas County public officials.

The Ninth Circuit affirmed the district court's denial of intervention. *Id.* at 782. In doing so, it found that these individuals' mere status as public officials was insufficient to support their application for intervention. *Id.* The public officials had alleged no interest in intervening as public officials, other than a general desire to ascertain the legal status of TRPA. *Id.*

The instant action is distinguishable from the authority relied upon by Stevenson. The Commission is not asserting some abstract interest, based solely on its status as representative of Washington and Oregon citizenry. Rather, the Commission was directly involved in the creation of the Scenic Area management plan; it must monitor and con-

---

**2.** 16 U.S.C. § 544d(e) provides:

The Secretary and the Commission shall exercise their responsibilities pursuant to sections 544 to 544p of this title in consultation with Federal, State, and local governments having jurisdiction within the scenic area or expertise pertaining to its administration and with Indian tribes. The Secretary and the Commission shall conduct public hearings and solicit public comment prior to final adoption of the management plan and the Commission shall conduct public hearings and solicit public comment prior to final adoption of land use ordinances. The Commission and the appropriate county shall promptly notify the Secre-tary, the States, local governments and Indian tribes of all proposed major development actions and residential development in the scenic area.

16 U.S.C. § 544d(g) provides:

No sooner than five years after adoption of the management plan, but at least every ten years, the Commission shall review the management plan to determine whether it should be revised. The Commission shall submit any revised management plan to the Secretary for review and concurrence, in accordance with the provisions of this section for adoption of the management plan.

sider changes to that plan on an ongoing basis. Any decision having the potential to affect the Forest Service's land acquisition policies may well require future revision of the current management plan.

The plaintiff once again attributes a narrow focus to the issues involved in this litigation. She notes that this case will only address the fair market value of her property and whether the Forest Service applied Uniform Appraisal Standards. As she correctly observes, the Commission has no authority over the Forest Service's land acquisition program under the Act.

However, as previously suggested, plaintiff's view of the issues before this court may be somewhat shortsighted. The Commission clearly has an interest in the administration of the management plan; the administration of the plan will likely be influenced by the court's interpretation of § 8(o). For example, if the court's interpretation of this section effectively curbs the Forest Service's acquisition of SMA property, many parcels currently classified as SMA may revert to GMA status. This will have obviously affect the Commission, since it is responsible for the administration of GMA land in the Scenic Area.

Accordingly the court finds that the Commission has articulated a significantly protectable interest based on its direct, participatory role in the administration of the Scenic Area management plan.

### 2. Adequacy of Representation

Plaintiff's only other challenge to the Commission's motion to intervene as of right is that its interests are sufficiently represented by the current federal defendants in this litigation. Her position is that if the Commission intends to assert that she cannot obtain judicial review or that the Forest Service did comply with the appropriate standards in its offer of $108,000 for her land, the United States Attorneys will surely make all appropriate legal arguments on these issues.

The Commission maintains in its memorandum that it has a statutory responsibility under the Scenic Area Act it which cannot be discharged by any of the other parties. It further suggests that its role as representative of the Washington and Oregon citizens located in this area provides it with a perspective not fully mirrored by the current parties to this action.

The court agrees, noting again that the Commission need sustain only a minimal burden on this point. The Act clearly provides to the Commission a unique role which is not supplanted by the Secretary of Agriculture or the Forest Service. The Act envisions each of these entities working together in an effort to represent the positions of the federal, state, and local governments. The Commission's perspective would not be duplicated by the current parties to this lawsuit.

### CONCLUSION:

The court therefore finds that both of these proposed intervenor-defendants have satisfied the criteria for intervention as of right. The court additionally notes, however, that even if intervention as of right was not warranted, it would be inclined to grant permissive intervention in both cases. Accordingly,

**IT IS HEREBY ORDERED** that the motion to intervene by the Friends of the Columbia Gorge (Ct.Rec. 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion to intervene by the Columbia Gorge Commission (Ct.Rec.36) is **GRANTED.**

**IT IS SO ORDERED.**