**NORTHERN SPOTTED OWL (STRIX OCCIDENTALIS CAURINA), et al., Plaintiffs,**

v.

**Donald HODEL, et al., Defendants.**

No. C88–573Z.

United States District Court,
W.D. Washington
at Seattle.

Nov. 17, 1988.

---

Victor M. Sher, Todd D. True and Corrie J. Yackulic, Sierra Club Legal Defense Fund, Seattle, Wash., and Michael R. Sherwood, Sierra Club Legal Defense Fund, San Francisco, Cal., for plaintiffs.

Donald A. Carr, Acting Asst. Atty. Gen., James C. Kilbourne and Charles W. Brooks, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

## ORDER OF REMAND

ZILLY, District Judge.

A number of environmental organizations bring this action against the United States Fish & Wildlife Service ("Service") and others, alleging that the Service's decision not to list the northern spotted owl as endangered or threatened under the Endangered Species Act of 1973, as amended, 16 U.S.C. § 1531 *et seq.* ("ESA" or "the Act"), was arbitrary and capricious or contrary to law.

Since the 1970s the northern spotted owl has received much scientific attention, beginning with comprehensive studies of its natural history by Dr. Eric Forsman, whose most significant discovery was the close association between spotted owls and old-growth forests. This discovery raised concerns because the majority of remaining old-growth owl habitat is on public land available for harvest.

In January 1987, plaintiff Greenworld, pursuant to Sec. 4(b)(3) of the ESA, 16 U.S.C. § 1533(b)(3), petitioned the Service to list the northern spotted owl as endangered. In August 1987, 29 conservation organizations filed a second petition to list the owl as endangered both in the Olympic Peninsula in Washington and in the Oregon Coast Range, and as threatened throughout the rest of its range.

The ESA directs the Secretary of the Interior to determine whether any species have become endangered or threatened[1] due to habitat destruction, overutilization, disease or predation, or other natural or manmade factors. 16 U.S.C. § 1533(a)(1).[2] The Act was amended in 1982 to ensure that the decision whether to list a species as endangered or threatened was based solely on an evaluation of the biological risks faced by the species, to the exclusion of all other factors. *See* Conf.Report 97–835, 97th Cong.2d Sess. (Sept. 17, 1982) at 19, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2807, 2860.[3]

The Service's role in deciding whether to list the northern spotted owl as endangered or threatened is to assess the technical and scientific data in the administrative record against the relevant listing criteria in section 4(a)(1) and then to exercise its own expert discretion in reaching its decision. *Cayman Turtle Farm, Ltd. v. Andrus,* 478 F.Supp. 125, 131 (D.C.Cir.1979).

---

1. The ESA defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range...." 16 U.S.C. § 1532(6). A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

2. Section 4(a)(1), codified at 16 U.S.C. § 1533(a)(1), provides that:
   The Secretary [of Interior in the case of terrestrial species] shall ... determine whether any species is an endangered species or a threatened species because of any of the following factors:
   (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
   (B) overutilization for commercial, recreational, scientific, or educational purposes;
   (C) disease or predation;
   (D) the inadequacy of existing regulatory mechanisms; or
   (E) other natural or manmade factors affecting its continued existence.

3. In its only opinion construing the Act the Supreme Court declared that "[t]he plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, whatever the cost." *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 184, 98 S.Ct. 2279, 2297, 57 L.Ed.2d 117 (1978) (further construction of nearly completed dam was permanently enjoined after discovery that the completed dam would eliminate the remaining habitat of an endangered species, the snail darter).

In July 1987, the Service announced that it would initiate a status review of the spotted owl and requested public comment. 52 Fed.Reg. 34396 (Sept. 11, 1987). The Service assembled a group of Service biologists, including Dr. Mark Shaffer, its staff expert on population viability, to conduct the review. The Service charged Dr. Shaffer with analyzing current scientific information on the owl. Dr. Shaffer concluded that:

> the most reasonable interpretation of current data and knowledge indicate continued old growth harvesting is likely to lead to the extinction of the subspecies in the foreseeable future which argues strongly for listing the subspecies as threatened or endangered at this time.

M. Shaffer, letter of November 11, 1987, to Jay Gore, U.S. Fish and Wildlife Service, Region 1, Endangered Species, attached to *Final Assessment of Population Viability Projections for the Northern Spotted Owl* [Administrative Record at III.A.1].

The Service invited a peer review of Dr. Shaffer's analysis by a number of U.S. experts on population viability, all of whom agreed with Dr. Shaffer's prognosis for the owl, although each had some criticisms of his work.

The Service's decision is contained in its 1987 Status Review of the owl ("Status Review") [Administrative Record at II.C] and summarized in its Finding on Greenworld's petition [4] ("Finding") [Administrative Record at I.D.1]. The Status Review was completed on December 14, 1987, and on December 17 the Service announced that listing the owl as endangered under the Act was not warranted at that time.[5] 52 Fed.Reg. 48552, 48554 (Dec. 23, 1987). This suit followed. Both sides now move for summary judgment on the administrative record before the Court.

In *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 629–32 (9th Cir.1987), the Court of Appeals for the Ninth Circuit rearticulated the test for summary judgment. The Court said, at 630–31:

> Thus, at this stage of the litigation, the [district] judge does not weigh conflicting evidence with respect to a disputed material fact. *Anderson, [v. Liberty Lobby, Inc.,* 477 U.S. 242,] 106 S.Ct. at 2513 [, 91 L.Ed.2d 202]. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. *See id.* These determinations are within the province of the factfinder at trial. Therefore, at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.... Inferences must also be drawn in the light most favorable to the nonmoving party. *Anderson,* 106 S.Ct. at 2513; *Matsushita, [Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574,] 106 S.Ct. at 1356–57 [, 89 L.Ed.2d 538].

This Court reviews the Service's action under the "arbitrary and capricious" standard of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *Friends of Endangered Species v. Jantzen,* 760 F.2d 976, 980–81 (9th Cir.1985). This standard is narrow and presumes the agency action is valid, *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976), but it does not shield agency action from a "thor-

---

**4.** Twelve–Month Petition Finding—Northern Spotted Owl, Memorandum from Regional Director, Fish and Wildlife Service, Region 1, to Director, Fish and Wildlife Service (December 17, 1987).

**5.** The Service's Finding provides as follows:
> A finding is made that a proposed listing of the northern spotted owl is not warranted at this time. Due to the need for population

trend information and other biological data, priority given by the Service to this species for further research and monitoring will continue to be high. Interagency agreements and Service initiatives support continued conservation efforts. This finding will be published in the *Federal Register* and the petitioner will be notified.

Finding at 5 [Administrative Record at I.D.1].

ough, probing, in-depth review," *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Courts must not "rubber-stamp the agency decision as correct." *Ethyl Corp. v. EPA, supra* at 34.

> Rather, the reviewing court must assure itself that the agency decision was "based on a consideration of the relevant factors...." Moreover, it must engage in a "substantial inquiry" into the facts, one that is "searching and careful." This is particularly true in highly technical cases....

*Id.* at 34–35 (citations and footnotes omitted). Agency action is arbitrary and capricious where the agency has failed to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (citations omitted).

■ The Status Review and the Finding to the listing petition offer little insight into how the Service found that the owl currently has a viable population. Although the Status Review cites extensive empirical data and lists various conclusions, it fails to provide any analysis. The Service asserts that it is entitled to make its own decision, yet it provides no explanation for its findings. An agency must set forth clearly the grounds on which it acted. *Atchison T. & S.F. Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 807, 93 S.Ct. 2367, 2374–75, 37 L.Ed.2d 350 (1973). Judicial deference to agency expertise is proper, but the Court will not do so blindly. The Court finds that the Service has not set forth the grounds for its decision against listing the owl.

■ The Service's documents also lack any expert analysis supporting its conclusion. Rather, the expert opinion is entirely to the contrary. The only reference in the Status Review to an actual opinion that the owl does not face a significant likelihood of extinction is a mischaracterization of a conclusion of Dr. Mark Boyce:

> Boyce (1987) in his analysis of the draft preferred alternative [6] concluded that there is a low probability that the spotted owls will go extinct. He does point out that population fragmentation appears to impose the greatest risks to extinction.

Status Review at 24 (footnote added). Dr. Boyce responded to the Service:

> I did not conclude that the Spotted Owl enjoys a low probability of extinction, and I would be very disappointed if efforts to preserve the Spotted Owl were in any way thwarted by a misinterpretation of something I wrote.

M. Boyce, letter of February 18, 1988, to Rolf Wallenstrom, U.S. Fish and Wildlife Service, Region 1, exhibit 7 to Complaint.[7]

Numerous other experts on population viability contributed to or reviewed drafts of the Status Review, or otherwise assessed spotted owl viability. Some were employed by the Service; others were independent. None concluded that the northern spotted owl is not at risk of extinction. For example, as noted above, Dr. Shaffer evaluated the current data and knowledge and determined that continued logging of old growth likely would lead to the extinction of the owl in the foreseeable future. This risk, he concluded, argued strongly

---

6. Boyce had evaluated proposals by the U.S. Forest Service concerning northern spotted owl habitat management. The Forest Service is preparing a Supplemental Environmental Impact Statement (SEIS) on its northern spotted owl policy. A draft SEIS was published in July 1986. [Administrative Record at IV.C.4.] As of this writing, the Forest Service has not released a final SEIS. The draft Supplemental Environmental Impact Statement ("DSEIS") on the spotted owl evaluates a number of management options of northern spotted owl habitat. The Forest Service found that implementation of its preferred management alternative will result in

a low probability of persistence of a well-distributed owl population on the Olympic Peninsula within 100 years and a medium to low probability in the rest of the owl's range. DSEIS at 4–28 to 31.

7. The court may consider, particularly in highly technical areas, substantive evidence going to the merits of the agency's action where such evidence is necessary as background to determine the sufficiency of the agency's consideration. *Love v. Thomas,* 838 F.2d 1059, 1067 (9th Cir.1988).

for immediate listing of the subspecies as threatened or endangered. M. Shaffer, *Final Assessment of Population Viability Projections for the Northern Spotted Owl*, Memorandum to Jay Gore, U.S. Fish and Wildlife Service, Region 1, Endangered Species (November 11, 1987) [Administrative Record at III.A.1].

The Service invited a peer review of Dr. Shaffer's analysis. Drs. Michael Soule, Bruce Wilcox, and Daniel Goodman, three leading U.S. experts on population viability, reviewed and agreed completely with Dr. Shaffer's prognosis for the owl.

For example, Dr. Soule, the acknowledged founder of the discipline of "conservation biology" (the study of species extinction), concluded:

> I completely concur with your conclusions, and the methods by which you reached them. The more one hears about *Strix occidentalis caurina*, the more concern one feels. Problems with the data base and in the models notwithstanding, and politics notwithstanding, I just can't see how a responsible biologist could reach any other conclusion than yours.

M. Soule, letter of November 1, 1987, to Dr. Mark Shaffer [Administrative Record at III.B.4].

The Court will reject conclusory assertions of agency "expertise" where the agency spurns unrebutted expert opinions without itself offering a credible alternative explanation. *See, e.g., American Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013, 1016 (9th Cir.1984). Here, the Service disregarded all the expert opinion on population viability, including that of its own expert, that the owl is facing extinction, and instead merely asserted its expertise in support of its conclusions.

The Service has failed to provide its own or other expert analysis supporting its conclusions. Such analysis is necessary to establish a rational connection between the evidence presented and the Service's decision. Accordingly, the United States Fish and Wildlife Service's decision not to list at this time the northern spotted owl as endangered or threatened under the Endangered Species Act was arbitrary and capricious and contrary to law.

The Court further finds that it is not possible from the record to determine that the Service considered the related issue of whether the northern spotted owl is a threatened species. This failure of the Service to review and make an express finding on the issue of threatened status is also arbitrary and capricious and contrary to law.

In deference to the Service's expertise and its role under the Endangered Species Act, the Court remands this matter to the Service, which has 90 days from the date of this order to provide an analysis for its decision that listing the northern spotted owl as threatened or endangered is not currently warranted. Further, the Service is ordered to supplement its Status Review and petition Finding consistent with this Court's ruling.

IT IS SO ORDERED.