**Dr. Robin SILVER, et al., Plaintiff,**

v.

**Bruce BABBITT, et al., Defendants.**

Nos. CIV 94–337 PHX CAM,
CIV 94–1610 PHX CAM.

United States District Court,
D. Arizona.

Aug. 11, 1994.

Steven Sugarman, Santa Fe, NM, Mark Edward Hughes, Denver, CO, for plaintiffs.

Teri Ronelle Thomsen, James C. Kilbourne, Elinor Colbourn, U.S. Dept. of Justice Environment & Natural Resources Division, Washington, DC, for Bruce Babbitt, Mollie Beattie.

Christopher L. Callahan, Robert Daniel Anderson, Joseph Patrick Mikitish, Fennemore Craig, Phoenix, AZ, for Stone Container Corporation.

Richard A. Segal, Gust Rosenfeld, Phoenix, AZ, for Precision Pine & Timber Inc.

## ORDER

MUECKE, District Judge.

Having considered the motions to intervene filed by Apache County and White Sands Forest Products, Inc. [White Sands] and the Arizona State Land Department [Arizona], the Court concludes as follows:

### Background

Plaintiffs filed the first amended complaint for declaratory and injunctive relief in this action on March 28, 1994 challenging Federal Defendants' [Fish and Wildlife Service (FWS) and the Secretary of Interior] failure to designate critical habitat for the Mexican Spotted Owl under the Endangered Species Act, 16 U.S.C.A. § 1533, *et seq.* Federal Defendants filed an Answer to the First Amended Complaint admitting that their failure to publish either a proposed or final rule designating critical habitat for the Mexican Spotted Owl constituted a violation of Section 4 of the Endangered Species Act. *See,* 16 U.S.C. § 1533. The Court subsequently granted plaintiffs' motion for judgment on the pleadings on the issue of liability finding that the Federal Defendants' failure to publish either a proposed or final rule designating critical habitat for the Mexican Spotted Owl constitutes a violation of Section 4 of the Endangered Species Act. 16 U.S.C. § 1533. The only remaining issue in this action is the appropriate injunctive relief. Plaintiffs request injunctive relief (1) compelling the Federal Defendants to propose and designate critical habitat as required by the ESA AND (2) compelling federal agencies to protect proposed habitat, as required by the ESA, in the same manner as if the habitat had been properly and timely proposed.

Two separate motions to intervene have been filed at this time. Apache County and White Sands move to intervene arguing that the Court should allow them to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) and in the alternative that the Court should allow permissive intervention pursuant to Rule 24(b)(2). Both plaintiffs and the federal defendants oppose intervention of right. Plaintiffs oppose permissive intervention but suggest that if the court is inclined that it grant amicus status rather than allow intervention. Federal defendants do not oppose permissive intervention but request, to insure judicial economy in this case, that the intervening parties be limited to filing memoranda addressing the positions taken by plaintiffs and federal defendants rather than bringing affirmative claims of their own.

The State of Arizona Land Department also moves to intervene of right pursuant to Rule 24(a)(2) or in the alternative requests permissive intervention under Rule 24(b)(2). Plaintiffs oppose Arizona's motion to intervene arguing that Arizona has no legally protectable interest in this action and intervention will unnecessarily complicate this action. Federal Defendants also oppose intervention of right but do not oppose *amicus* or limited permissive intervention.

### Discussion

**I. Intervention of Right**

Federal Rule of Civil Procedure 24(a) allows for intervention of right and provides:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that inter-

est, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).

Intervention "of right" under Rule 24(a)(2) exists when the applicant establishes all four criteria:

(1) The application for intervention must be timely;

(2) The applicant's interest must relate to the property or transaction involved in the pending lawsuit;

(3) Disposition of the lawsuit may adversely affect the applicant's interest unless intervention is allowed AND

(4) The existing parties do not adequately represent the would-be intervenor's interests.

*United States ex rel. McGough v. Covington Technologies*, 967 F.2d 1391, 1394 (9th Cir. 1992); *Sierra Club v. E.P.A.*, 995 F.2d 1478 (9th Cir.1993). Only if all four factors exist, is intervention of right required. *Id.*

**A. Should Apache County and White Sands be allowed to intervene of right?**

**1. Is the application timely in this case?**

▮ Timeliness is a threshold question addressed to the sound discretion of the district court. *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973); *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir.1991). The Court must consider all of the circumstances in the particular case when making the determination and timeliness is to be construed broadly in favor of the party seeking intervention. *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir.1983). In addition, the court should be more lenient when intervention is sought as a matter of right. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir.1984). Three factors are relevant to the determination of timeliness including:

(1) the stage of the proceedings at the time the applicant seeks to intervene;

(2) prejudice to the existing parties from applicant's delay in seeking leave to intervene; and

(3) any reason for and the length of delay in seeking intervention (how long the prospective intervenors knew or reasonably should have known of their interest in the litigation).

*Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir.1978), *cert. denied*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).

▮ As for the first factor, in general, the earlier that intervention is sought the more likely it will be granted. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–96, 97 S.Ct. 2464, 2470–71, 53 L.Ed.2d 423 (1977). Relevant to the second factor of prejudice to the existing parties, the court should consider any prejudice to the existing parties resulting from the would-be intervenor's failure to request intervention earlier. *United States v. Jefferson County*, 720 F.2d 1511, 1517 (11th Cir.1983).

▮ Finally, the third factor considers why the party seeking to intervene waited as long as it did. The length of the delay itself is not determinative. Rather, the court should focus on the date the person attempting to intervene should have been aware his interests would no longer be protected by the parties, rather than the date the person learned of the litigation. *Officers for Justice v. Civil Service Comm'n*, 934 F.2d 1092, 1095 (9th Cir.1991).

There is no dispute in this case that the applicants' motion to intervene is timely. This action was filed on February 17, 1994. The applicants filed their motion to intervene on March 3, 1994.[1] Subsequently, on March 28, plaintiffs filed the amended complaint. Therefore, the application was timely made in this case and the Court need not consider the remaining two factors regarding delay.

**2. Do the applicants' interests relate to the property or transaction involved in the pending lawsuit?**

▮ The interest test is a practical threshold test for intervention as of right.

---

1. The Court stayed the case for a short period of time and allowed the plaintiffs additional time to respond to the intervention motions. Because the State of Arizona also filed a motion for intervention in April of 1994, the Court waited to rule on all of the motions at the same time.

*Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993). No specific legal or equitable interest need be established. *Portland Audubon v. Hodel,* 866 F.2d 302, 308 (9th Cir.), *cert. denied,* 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989). However, the applicant must demonstrate a "significant protectable interest" in the transaction that is the subject of the case. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); *Portland Audubon,* 866 F.2d at 309. "It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. EPA,* 995 F.2d 1478, 1484 (9th Cir.1993). However, economic stake in litigation, "even if significant," is not enough to establish a "significant protectable-interest." *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993); *Portland Audubon v. Hodel,* 866 F.2d at 309.

### a. Does the procedural process that FWS must follow to designate habitat create an interest for the applicants?

█ The applicants first argue that they have an interest because of the procedural steps that the FWS must follow in designating critical habitat for the Mexican Spotted Owl. Applicants argue that their interest is particularly strong because the plaintiffs seek extraordinary injunctive relief compelling federal agencies to protect all current and potential habitat of the Mexican Spotted Owl in the same manner as if the habitat had been properly designated. Thus, applicants argue this court would be required to determine the habitat for the species. The parties respond that (1) the complaint has been amended to clarify that the plaintiffs do not request such extraordinary relief and that (2) the procedural rules will protect the applicants but the rules themselves do not create a protectable interest.

Congress passed the ESA to conserve threatened and endangered species. 16 U.S.C.A. § 1531. The ESA and its regulations require that the Secretary of Interior and FWS list species of plants and animals which are facing extinction as "threatened" or as "endangered." 16 U.S.C.A. §§ 1533, 1532(6) and 1532(20). The Secretary designated the Mexican Spotted Owl to be a "threatened" species pursuant to the Endangered Species Act of 1973 [ESA] on March 16, 1993. 58 Fed.Reg. 14248 (March 16, 1993). Generally, the Fish and Wildlife Service must designate critical habitat[2] concurrently with determining that a species is threatened ˎor endangered. 16 U.S.C.A. § 1533(a)(3)(1985). Thus, the designation should have occurred in March of 1993. However, if critical habitat cannot be determined when the final regulation by which the species is determined to be threatened or endangered is published, then the designation of critical habitat may be postponed for up to one year. 16 U.S.C.A. § 1533(b)(6)(B)(i) (1985). Under the federal regulations, critical habitat is not determinable when one or both of the following exist:

(i) Information sufficient to perform required analyses of the impacts of the designation is lacking, or

(ii) The biological needs of the species are not sufficiently well-known to permit identification of an area as critical habitat.

50 C.F.R. § 424.12(a)(2).

Thus, if either or both of the above conditions existed, the Federal Defendants could have postponed designation until March of 1994 in this case.

In designating critical habitat, FWS must consider the economic and other impacts resulting from the designation and may exclude particular geographic areas occupied by the species based on those impacts:

(ii) Specific areas outside the geographical area occupied by the species at the time it is listed ..., upon a determination by the Secretary that such areas are essential for the conservation of the species.

16 U.S.C.A. § 1532(5)(A)(1985).

**2.** The ESA defines "critical habitat" as:

(i) The specific areas within the geographical area occupied by the species a the time it is listed ..., on which are found those physical or biological features (i) essential to the conservation of the species and (ii) which may require special management considerations or protection; and

The Secretary shall designate critical habitat ... on the basis of the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat. The Secretary may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned.

16 U.S.C.A. § 1533(b)(2) (1985).

The ESA requires that FWS give actual notice of the proposed regulation to the applicants in this action:

With respect to any regulation proposed by the Secretary to implement a determination, designation, or revision referred to in subsection (a)(i) [determining when a species is threatened or endangered] or (3) [designating critical habitat] of this section, the Secretary shall

\* \* \* \* \* \*

(ii) give actual notice of the proposed regulation (including the complete text of the regulation) ... to each county or equivalent jurisdiction in which the species is believed to occur, and invite the comment of such agency, and each jurisdiction, thereon;

16 U.S.C.A. § 1533(b)(5)(A)(ii)(1985).

Federal Regulations also require that FWS give notice to Applicants in this action:

In the case of any proposed rule to list, delist, or reclassify a species, or to designate or revise critical habitat, the Secretary shall

\* \* \* \* \* \*

(iii) give notice of the proposed regulation to any Federal Agencies, local authorities or private individuals or organizations know to be affected by the rule

...

50 C.F.R. § 424.16(c)(1)(ii).

The procedural steps required by the ESA in proposing and designating critical habitat include giving notice to the applicants, considering economic impact, and allowing comment on the proposed critical habitat. 16 U.S.C.A. § 1533 Clearly the ESA requires that FWS must follow these procedural requirements and failure to comply with the proper procedures will allow the applicants to enforce the ESA requirements in a separate action in federal court pursuant to 16 U.S.C.A. § 1540(g). There is nothing in the amended complaint to indicate that plaintiffs request that this Court allow circumvention of the procedural rules or that this Court will be required to designate critical habitat. Rather, plaintiffs request an injunction ordering that the FWS follow these rules. In addition, this Court will not allow circumvention of the procedural rules and nothing in the record indicates that the FWS will not follow the procedural requirements of the ESA. Thus, intervention may be denied. See, American Lung Association v. Reilly, 962 F.2d 258 (2d Cir.1992).

█ Moreover, the applicants' interest in the required procedural steps may be relevant in a future action but those interests are too indirect and premature at this time. If the Federal Defendants include geographic areas in the designation that impact the applicants, the applicants they may pursue a subsequent action pursuant to 16 U.S.C.A. § 1540(g) after the administrative procedures set forth in the ESA have been followed by the Federal Defendants. At this time, applicants interests, even if protectable, are not colorable as no areas have been designated as habitat. "An interest that is ... contingent upon the occurrence of a sequence of events before it becomes colorable will not satisfy the rule" for intervention. Washington Electric Cooperative v. Mass. Municipal Wholesale Elec., 922 F.2d 92, 97 (2d Cir. 1990). As discussed more fully below, in this case applicants action, if any, would occur after designation of habitat and compliance with the administrative notice and comment process.

**b. Are the Applicants' economic interests protectable interests or are those interest too speculative at this time to require intervention of right?**

█ Applicant White Sands argues that it will be significantly affected by the desig-

nation of a critical habitat because White Sands is engaged in the forest products business in south-central and eastern New Mexico and obtains its timber from national forest lands. Applicant Apache County argues that it is a rural county in northeastern Arizona in which a significant portion of the economy is based on industries and business using public land including forest products, livestock grazing recreation and mining industries and that taxes and fees levied on public land users provide a significant source of funds for local school districts and county government. Plaintiffs respond that this economic interest is not ripe or direct because even if this court grants all the relief requested by plaintiffs, applicants' interest in cutting down trees on public lands will not be affected unless (1) FWS determines that the lands on which applicants have an interest in having logging continue are within the area that FWS proposes to include as critical habitat; (2) FWS does not exclude such land as part of the economic consideration process required by the ESA; (3) the FWS does not exclude such lands for other reasons in response to public comment; (4) the critical habitat designation is published in final form, without changes; and (5) logging cannot take place without destroying or adversely modifying that critical habitat. See 16 U.S.C.A. § 1536 which bars adverse modification of critical habitat. Applicants respond that their interests are not contingent because a proposal of critical habitat results in immediate imposition of land-use restrictions which are effective prior to completion of the agency rulemaking process.

The Eleventh Circuit addressed an analogous situation in the context of the Clean Water Act in ManaSota–88, Inc. v. Tidwell, 896 F.2d 1318 (11th Cir.1990). In ManaSota, plaintiffs sought to have the EPA identify "noncompliance water bodies." As in the case of designation of a critical habitat, the federal agency identifies such water bodies and more procedural steps follow before restrictions are placed on the use of these water bodies. FGC, a group of utilities, moved to intervene as of right, arguing that as holders of permits that allowed them to discharge pollutants into some water bodies, they had a legally protectable interest in the

action. The Eleventh Circuit held that the applicants' interest was too speculative, stating:

> At this juncture ... FGC does not and cannot specify a noncompliance water body into which a utility discharges since, as plaintiff alleges, no noncompliance water bodies have been identified. This identification is what plaintiff seek to compel, and whether FGC's members discharge into a water body eventually specified as noncompliance is purely a matter of speculation at this time.

ManaSota, 896 F.2d at 1322.

The identification of water bodies is analogous to the designation of critical habitat in this case. The impact of designating some public lands in the Southwest as critical habitat upon applicants' interest in logging particular public lands is equally speculative and generalized at this time. No potential habitat has been identified. At this time, the interest is too indirect to support intervention as of right into this action. Like the ManaSota court, the Ninth Circuit only grants intervention as of right where litigation will have a direct effect on the applicant's alleged interest. See e.g. Sierra Club v. EPA, 995 F.2d 1478. As in ManaSota, any impact on logging activities depends on several post-litigation actions by a federal agency. An interest which is contingent upon the occurrence of a train of subsequent events will not support intervention. Washington Electric, 922 F.2d at 97; Oregon Env. Council, 775 F.Supp. at 358. Therefore, the applicants' interests are too speculative at this time to justify intervention of right.

Similarly, in Portland Audubon, the Ninth Circuit denied intervention to timber companies that alleged economic interests in ensuring their continued supply of timber from public lands in a National Environmental Policy Act [NEPA] suit. Portland Audubon, 866 F.2d at 308. Plaintiffs sued to compel a federal agency to prepare an environmental impact statement before offering further timber sales. Portland Audubon, 866 F.2d at 308. The Ninth Circuit affirmed the district court's denial of intervention finding:

The district court correctly followed *Wade [v. Goldschmidt,* 673 F.2d 182 (7th Cir. 1982) ] in holding that the intervenors' lack an adequate interest relating to the plaintiffs' NEPA claims where NEPA provides no protection for the purely economic interest that they assert. Although the intervenors have a significant economic stake in the outcome of plaintiffs' case, they have pointed to no "protectable" interest justifying intervention as of right. *Donaldson v. United States,* [400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) ].

*Portland Audubon,* 866 F.2d at 309.

The Ninth Circuit later explained:

> The loggers' interest ... appears to have been an economic interest based upon a bare expectation, not anything in the nature of real or personal property contracts, or permits.

*Sierra Club v. EPA,* 995 F.2d at 1482. The Ninth Circuit also explained in *Portland Audubon* that it was denying the application for intervention because the economic interest had "no relation to the interest intended to be protected by the statute at issue." *Portland Audubon,* 866 F.2d at 309. Like *Portland Audubon,* this action concerns a claim under a statute regulating government conduct and concerns a duty imposed by that statute on the government alone. The injunctive relief at issue is compelling the federal defendants to comply with their requirements under the ESA—proposing and designating habitat for the Mexican Spotted Owl in a timely manner. Thus, intervention by nonfederal economic interests in not appropriate.

In another case very similar to this case containing similar parties, subject matter and claims, the district court rejected intervention by the timber companies. *Northern Spotted Owl v. Hodel,* 716 F.Supp. 479 (W.D.Wash.1988). *Northern Spotted Owl* was an ESA suit brought to force the FWS to list the northern cousin of the Mexican Spotted Owl as a threatened species. The Court found that although the "economic interests of the applicants are evident," and the "timber companies rely on federal timber sales," their economic interest in logging was not a protectable interest for the purposes of

intervention into that action challenging FWS's decision not to placed the Northern Spotted Owl on the endangered species list. *Northern Spotted Owl v. Hodel,* 716 F.Supp. at 480.

In another similar case regarding the Clean Air Act, the district court held that permit-holding industry applicants could not intervene in an action to enforce mandatory governmental duties under the Clean Air Act. *Oregon Env. Council v. Oregon Dept. of Environmental Quality,* 775 F.Supp. 353, 358 (D.Or.1991). The Court stated:

> The focus of this litigation is whether the [Department of Environmental Quality] ... has followed the procedures and met the requirements set forth in the implementation plan for issuing permits and exceptions. *In such a suit, "brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants."*

*Oregon Env. Council,* 775 F.Supp. at 358.

FWS's duty under the ESA to identify critical habitat for the Mexican Spotted Owl is analogous to the government's duty to prepare an environmental impact statement under the NEPA. FWS must designate critical habitat for species listed under the ESA. The claims in all of these cases involve nondiscretionary duties of the government alone. The applicants' economic interests are not entitled to legal protection in a suit, such as this one, to force a federal agency to comply with governmental duties under an environmental law. Unlike the timber companies in *Sierra Club,* this action does not threaten existing contracts or challenge any contract, taxing power, land ownership, regulation or economic interest of any short or seek to include or exclude any particular are of land to be designated as critical habitat. If applicants wish to challenge the extent and nature of the critical habitat designation, after the FWS designates habitat, applicants may do so in a subsequent action pursuant to 16 U.S.C.A. § 1540(g). Currently that issue is unripe and the applicants' interests are too speculative.

**3. Will disposition of this lawsuit adversely affect the applicants' interests unless intervention is allowed?**

The applicants must also show that disposition of the pending action would have a potential adverse impact on the would-be intervenor's interest or that the action may "as a practical matter impair or impede the applicant's ability to protect that interest." Fed.R.Civ.P. 24(a). A judicial decision which "as a practical matter" would foreclose the would-be intervenor's interest is sufficient impairment. *Sierra Club*, 995 F.2d at 1486. "Mere inconvenience" caused by added expense and delay from having to file a separate lawsuit is not sufficient impairment to justify intervention as of right. *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir.1977).

Plaintiffs argue that even if a protectable interest existed, disposition of this matter would not impair or impede the applicants ability to protect their interest in the many administrative steps that will precede the final designation of critical habitat. Similarly, defendants argue that the applicants' economic interests can be adequately protected in the rule making process which requires consideration of economic impacts. *See* 16 U.S.C.A. § 1533(b)(2) and 50 C.F.R. § 424.16.

The Court finds that the applicants' interests, to the extent that they are protectable, will not be impaired by this action. The rule making process requires notice to the applicants of the proposed critical habitat and affords applicants an opportunity to comment. *See* U.S.C.A. § 1533 (1985). If applicants are unhappy with the result, they have recourse to the court by filing an action pursuant to 16 U.S.C.A. § 1540(g). No result in this suit can remove the citizen suit provision from the ESA or the applicants' right to invoke it. Thus, this lawsuit cannot and will not impair applicants' alleged interests and intervention should be denied. *Compare American Lung Association v. Reilly*, 962 F.2d 258 (2d Cir.1992) (denying industry intervention where participation in administrative process was not precluded by the action) *with U.S. v. South Florida Water Management District*, 922 F.2d 704, 708 (11th Cir.1991), *cert. denied*, 502 U.S. 953, 112 S.Ct. 407, 116 L.Ed.2d 356 (1991) (intervention permitted if the lawsuit would preclude administrative participation protected under state law).

Because there is no indication that the applicants will not be given consideration during the rule making process and the federal defendants are required by statute to consider the applicants' positions and because they can challenge any possible designation that would affect them in the future in a subsequent action, intervention is not required of right in this case.

**4. Do the exiting parties adequately represent the would-be intervenors' interests?**

Plaintiffs argue that if the applicants had an interest in the disposition of this suit, the federal defendants adequately represent that interest. Applicants respond that their interests differ from the federal defendants. Therefore, they argue, their interests will not be protected.

Even if proposed intervenors' interests may be impaired, there is no right to intervene if "the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2). This requirement is satisfied if the representation "may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Applicants have the burden of proving that their interests would not be adequately represented by the existing parties to the suit. *See* 3B Moore's Federal Practice § 24.07[4]. The burden of showing inadequate representation is "most onerous" where an existing party is under a legal obligation to represent the putative intervenor's interests. *In re Thompson*, 965 F.2d 1136, 1142 (1st Cir.1992). In determining adequacy of representation, the court considers "whether the interest of a present party is such that it will undoubtedly make all of the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer necessary elements to the proceedings that the other parties would neglect. *People of State of California v.*

*Tahoe Regional Planning Agency,* 792 F.2d 775, 778 (9th Cir.1986).

Applicants have not shown that the FWS is unwilling or incapable of making a defense regarding liability as liability has already been determined. Rather, the ESA and its corresponding regulations require that the federal defendants propose habitat, allow the applicants to comment and consider their comments, including economic interests, before designating the habitat. 16 U.S.C.A. § 1533(b)(2); 50 C.F.R. § 424.16. There is no evidence in this case that the federal defendants will not follow the notice and comment procedures or substantive requirements of the ESA in designating habitat. Therefore, intervention of right is not proper for applicants Apache County and White Sands.

**B. Should Arizona be allowed to intervene of Right?**

**1. Is the application timely in this case?**

Again, it is undisputed that Arizona Land made a timely application for intervention. Because the application was filed on April 1, 1994 and the amended complaint in this action was filed March 28, 1984, the Court considers the application timely.

**2. Does the applicant's interest relate to the property or transaction involved in the pending lawsuit?**

Applicant Arizona State Land argues that it has an interest because: (1) it is trustee of state trust lands which could be affected by the designation of habitat; (2) As State Forester, the Arizona Land Department is a non-federal representative for informal consultations under the ESA and (3) as State Forester, the Arizona Land Department's duty to suppress wildfires could be affected by the designation of habitat. Plaintiff responds that the federal defendants have the sole duty to designate habitat and that the Land Department's interests are too contingent to justify intervention of right into this action. Federal defendants do not dispute that application is timely or that the Land Commissioner has an interest. Rather, they argue that the State's interest will not be impaired if this case proceeds and, in any event, they will adequately represent applicant Land Department's interest. Federal Defendants agree that the state's interest lies in the effects of the designation of critical habitat for the Mexican Spotted Owl on its own lands and its role as a nonfederal designee for consultations under section 7 of the ESA.

**a. Does Arizona Land Department have an interest because it is designated as trustee of state trust lands which will be affected by this action?**

Through the Arizona Enabling Act, 36 U.S. Stat. 557, 568–579 (Enabling Act"), the United States Congress granted approximately ten million acres of federal land of Arizona, in trust, for the support of commons schools and other public institutions. *Gladden Farms, Inc. v. State,* 129 Ariz. 516, 518, 633 P.2d 325, 327 (1981); Enabling Act, §§ 24–30. The Enabling Act is a federal law passed by Congress setting forth the conditions under which Arizona could organize as a state and enter the union and its terms cannot be altered, changed, amended or disregarded without an act of Congress. *Gladden Farms,* 129 Ariz. at 518, 633 P.2d at 327; Ariz. const., art. XX, paragraphs 12 and 13. The granted lands and the natural products of those lands, including the timber, are held in a trust by Arizona for its beneficiaries. Enabling Act 528; *United States v. 11.2 Acres of Land,* 293 F.Supp. 1042, 1049 (E.D.Wash.1968), *aff'd* 435 F.2d 561 (9th Cir. 1970). As trustee, Arizona holds state trust land in a fiduciary capacity. *See, State v. Clausen,* 134 Wash. 196, 235 P. 364 (1925). The Commissioner is strictly obligated to manage the trust lands for the benefit of the trust and its beneficiaries. *Berry v. Arizona State Land Department,* 133 Ariz. 325, 327, 651 P.2d 853, 855 (1982). The benefit from the trust is not the land itself but the revenues it generates. *Lassen v. Arizona,* 385 U.S. 458, 463, 87 S.Ct. 584, 587, 17 L.Ed.2d 515, 519 (1967).

The State Land Department administers a timber sales and forestry management program on state trust lands. A.R.S. § 37–481–82; Arizona Administrative Code §§ R12–1001 through 1012. The state trust

lands involved in State Land's forest management and timber sales program are the beneficiaries of certain federal funds under the United States Forest Service Cooperative Forestry Assistance Program. Because of these federal funds, the state trust lands are subject to the consultation requirement of § 7 of the ESA. 16 U.S.C. § 1536(2).

Under the Arizona–New Mexico Enabling Act, Arizona was granted lands in trust to be managed to generate revenues for trust beneficiaries, in this case the University of Arizona. Enabling Act, § 24–30 Appendix A. These state trust lands participate in the Cooperative Forestry Assistance Program funded by the USFS.

Applicant Arizona State Land Department is empowered under Arizona law to "in the name of the state, commence, prosecute and defend all actions and proceedings to protect the interest of the state in lands within the state or the proceeds thereof." A.R.S. § 102(C)1 A.R.S. § 37–132(A)(1).

The Court believes that the Land Commissioner's interest in trust lands is not ripe in this action. After the FWS designates critical habitat, the Land Commissioner and other parties may challenge the nature and extent of FWS's designation. The Land Commissioner may also wish to challenge any restrictions that FWS may place on particular lands, including state trust lands. At this time, such challenge is unripe as no lands have been designated and no restrictions have been placed on the unidentified lands. Thus, there are no lands directly affected by this action.

**b. Does Arizona Land Department have an interest because as State Forester, Mr. Hassell has been designated by the United States Forest Service as a non-federal representative/applicant for informal consultations under the ESA and in that capacity he has a direct interest in the outcome of this action?**

■ The Arizona State Land Commissioner has been designated by the Arizona legislature as the State Forester. A.R.S. § 37–621(a). The State Forester, Mr. Hassell, is the agent of the State of Arizona for

the administration of state programs under the Cooperative Forestry Assistance Act of 1978, P.L. 95–313; 92 Stat. 3645; 16 U.S.C. § 41, providing for federal forestry assistance programs to states. A.R.S. § 37–622(A) and (C). As State Forester, Mr. Hassell has been designated pursuant to 50 C.F.R. § 402.08 by the United States Department of Agriculture Forest Service, Southwestern Region, to act on behalf of the Forest Service as a non-federal representative in the informal consultation process with the FWS under Section 7 of the Endangered Species Act. This designation extends to all matters concerning actions of the State of Arizona on State Trust Lands and/or actions by the State of Arizona in support of the private land owner assistance programs administered by the State. Thus, the applicant argues that the State Forester is directly impacted by the plaintiffs request to compel federal agencies to protect all current and potential habitat of the Mexican Spotted Owl in the same manner as if that habitat had been properly and timely proposed as critical habitat for the Mexican Spotted Owl and that relief will affect federally funded programs administered by the State Forester.

This action seeks an order compelling a federal agency, FWS, to designate critical habitat for the Mexican Spotted Owl. There is no dispute that this duty falls solely on the federal defendants and not on the Land Commissioner. Such lands, if affected, will not be known until FWS designates critical habitat. The FWS's duty to designate critical habitat has nothing to do with any "designated non-federal representative for informal Section 7 consultation." *Compare*, Section 4, 16 U.S.C.A. § 1533(a) (listing and habitat designation process) with Section 7, 16 U.S.C.A. § 1536(a) (consultation duty imposed on federal agencies). The Land Commissioner's informal role does not make him a proper defendant in this action concerning the duty of the FWS, a federal agency, under Section 4 of the ESA. The duty to designate habitat falls solely on the federal government, specifically the Secretary of the Interior under 16 U.S.C.A. § 1533(a).

c. **Does Arizona Land Department have an interest because the Arizona State Land Commissioner is empowered to suppress wildfire in the United States, Arizona, Mexico and Canada and forest management practices implicated by this action will impact suppression of wildfire in Arizona?**

■ The State Forester is empowered to suppress wildfires in Arizona, the United States, Mexico and Canada. A.R.S. § 37–623(A). Pursuant to cooperative fire agreements, the State Forester is charged with responsibility to prevent and suppress wildfires when requested to do so on state and federal forest lands in Arizona and elsewhere. A.R.S. § 37–623(B).; Joint Powers Agreement Between the State of Arizona and the Federal Agencies of the Departments of Agriculture and Interior with Fire Responsibilities. An issue that must be considered when designating critical habitat is the extent to which management practices which lead to overstocking, stagnation, thick brush and tree stands and accumulated dead and down fuels on the ground will almost certainly increase the likelihood of catastrophic forest fire causing major destruction of property and wildlife throughout the land affected. The applicant argues that the potential destruction of the state trust lands through the possibility of such wildfire implicates the Land Commissioner's fiduciary obligation to seek to participate in these decisions.

The ESA requires that the Secretary give notice of a proposed designation of critical habitat to local authorities and that information regarding any relevant impact be considered prior to designating critical habitat. 16 U.S.C.A. § 1533(b)(2); 50 C.F.R. § 424.16(c)(1)(iii). Applicant argues that forest management practices established by a designation of critical habitat are extremely significant with respect to the danger of catastrophic wildfire.

There are no forest management practices at issue in this action. The Land Commissioner's interest in forest management may or may not be "substantial" but that interest is irrelevant in this action. The Land Department may assert its interests in a suit to challenge designation of critical habitat after FWS complies with the ESA. The Land Commissioner's intervention into this action will only complicate what is at this time a simple action to set a deadline for the Federal Defendants to make their critical habitat designation. Wildfire suppression, forest management practices and the informal section 7 consultation process are properly considered in any subsequent action to challenge any designation of critical habitat that impacts on the applicant.

**3. Will disposition of this lawsuit adversely affect the applicant's interests unless intervention is allowed?**

■ Applicant argues that the designation at the earliest possible time will prevent State Land from having its opportunity to be heard regarding designation of critical habitat.

However, this case is not about the merits or substance of the designation itself, it concerns only the time frame under which designation, already conceded to be overdue, will occur. This action will therefore not impair the interest of the state in ensuring that the Federal Defendants properly consider the effects on the state when they designate critical habitat. The state will retain every opportunity to participate in the rulemaking process through public notice and comment procedures and can raise any concerns regarding effects on the state in that process. See 50 C.F.R. § 424.16. Moreover, this suit will not affect, nor does the state allege it will affect, the ability of the state to seek judicial review of a final designation of critical habitat. No claims regarding consideration of effects on the state would be ripe for review until the agency completes the final agency action by final designation of critical habitat. *See, Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–151, 87 S.Ct. 1507, 1515–17, 18 L.Ed.2d 681 (1967). The Court will not order injunctive relief that does not allow for the statutory and regulatory procedures. If for some reason the state believes that the federal defendants failed to fulfill legal requirements they may seek judicial review after the designation pursuant to 16 U.S.C. § 1540(g).

### 4. Do the exiting parties adequately represent the would-be intervenors' interests?

Applicant argues that no mandate of any federal defendant encompasses the State Land's fiduciary duty to protect the interest of trust beneficiaries in the use of state lands and that federal defendants are not charged with the State Forester's responsibility to suppress wildfires. Thus, applicant argues its interests cannot be represented by federal defendants.

The Court sees the interests of the state and federal defendants as identical in this action—establishing a time frame under which critical habitat can be designated for the Mexican Spotted Owl in a timely fashion while meeting all requirements of the statute and regulations. In addition, the amended complaint no longer seeks protection of potential critical habitat prior to its identification in a proposed rulemaking. Rather, the amended complaint now requests only protection of critical habitat when proposed "in accordance with the requirements of the ESA." Thus, the relief is not extraordinary and merely requires compliance with the ESA.

## II. Permissive Intervention

### A. Should the Court allow Apache County and White Sands permissive intervention or in the alternative amicus status?

Permissive intervention is governed by Federal Rule of Civil Procedure 24(b) which provides:

> (b) **Permissive Intervention.** Upon timely application anyone may be permitted intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b).

Permissive intervention is a two-stage process. First, the district court must decide whether one of the grounds for such intervention exists. If this threshold requirement is met, the court must then exercise its discretion in deciding whether intervention should be allowed. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). Whether sufficient grounds for permissive intervention exist is a question of law regarding whether the applicants' claim or defense and the main action have a "common question of fact or law" *Beckman Industries Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir.1992), *cert. denied, sub. nom., Int'l Ins. Co. v. Bridgestone/Firestone, Inc.*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140. The determination of whether a "common question" exists is liberally construed. *Monsanto*, 558 F.2d at 265.

If a "common question" exists, the second issue is whether intervention "will unduly delay or prejudice the original parties" and this issue is committed to the sound discretion of the trial court. Fed.R.Civ.P. 24(b); *Stallworth*, 558 F.2d at 269. The delay and added expense to the original parties in litigating the proposed intervenor's claims are important factors. However, they must be raised and proved by the original parties. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir.1989), *aff'd, sub nom., Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Judicial economy is also a relevant consideration. Intervention may be denied if it would require the court to decide novel or difficult issues of state law. *Venegas*, 867 F.2d at 531.

In addition the court may consider other factors including (1) the nature and extent of the would-be intervenors' interests; (2) their standing to raise relevant legal issues; (3) the legal position they seek to advance and its probable relation to the merits of the case; (4) whether changes have occurred in the litigation so that intervention that was once denied should be reexamined; (5) whether the intervenors' interest are adequately represented by other parties; (6) whether intervention will prolong or unduly delay the litigation; and (7) whether the would-be intervenors "will significantly contribute to full development of the underlying

factual issues in the suit and to the just and equitable adjudication of the legal questions presented. *Spangler v. Pasadena City Board of Education,* 552 F.2d 1326, 1329 (9th Cir.1977); *League of United Latin American Citizens v. Clements,* 884 F.2d 185 (5th Cir. 1989).

### 1. Do the applicants' claims or defenses and this action have common questions of law or fact?

■ Plaintiffs argue that permissive intervention is inappropriate as applicants Apache County and White Sands have no claim or defense involving common questions of law or facts with those in this action. Defendants do not oppose permissive intervention as long as the court restricts the intervening entities to filing memoranda addressing the positions taken by plaintiff and defendants in any dispositive motions filed by those parties and that the intervening parties not be allowed to bring affirmative claims of their own, including attorneys fees or to file dispositive motions except by express leave of the court. The applicants argue that their defenses to the relief sought, arise out of the central issue in this litigation: whether the FWS has complied with the ESA with respect to designating critical habitat for the Mexican Spotted Owl.

Although, applicants argue that the relief sought is overbroad and may require FWS to violate the ESA, this Court will not impose injunctive relief that violates the procedural or substantive requirements of the ESA. As discussed more fully above, the purpose of the injunctive relief in this case is to compel the federal defendants to comply with their obligations under the ESA. Thus, although applicants comments and economic arguments are considered by federal defendants in the process, applicants do not state any defenses that share a common fact or law questions in this action.

■ Further, permissive intervention under Rule 24(b) cannot be regarded as part of the main action and the would-be intervenor must establish independent grounds for federal subject matter jurisdiction. *Blake v. Pallan,* 554 F.2d 947, 955 (9th Cir.1977). The would-be intervenor must show federal subject matter jurisdiction both for the permissive intervention in the first instance and for any newly-raised claims or causes of action. *Pallan,* 554 F.2d at 956. The applicants have not established such jurisdiction and lack standing to assert their interests in this action. Nor have the applicants presented new questions or shown that they will suffer injury from this disposition of this suit.

■ Where proposed intervenors present no new questions, courts have preferred to confer amicus status rather than granting permissive intervention. *State of Texas v. U.S. Department of Energy,* 754 F.2d 550, 553 (5th Cir.1985); *Bush v. Viterna,* 740 F.2d 350, 359 (5th Cir.1984); *British Airways Bd. v. Port Authority,* 71 F.R.D. 583, 585 (S.D.N.Y.), *aff'd* 556 F.2d 554 (2nd Cir.1976). Thus, permissive intervention is not appropriate for applicants Apache or White Sands. However, the Court will allow applicants amicus status as set forth more fully below.

### B. Should the Court allow the Arizona Land Department permissive intervention or in the alternative amicus status?

### 1. Do the applicant's claims or defenses and this action have common questions of law or fact?

■ Applicant Arizona Land Department argues that the relief requested impinges directly upon its rights to receive notice and participate in the designation of critical habitat and injunctive relief directly affects its ability to use its state trusts land under the interim relief sought by plaintiffs. In addition, the state's obligation as state forester as a non-federal representative/applicant in informal consultation with FWS for purposes of compliance with ESA places the state in the same position as the "federal agencies" against whom injunctive relief is sought.

Plaintiffs oppose permissive intervention, but not amicus status. The federal defendants do not oppose limited permissive intervention in an amicus status that restricts the applicant to filing memoranda addressing the positions taken by the parties in any dispositive motions on the further condition that the applicant not be allowed to bring affirmative

claims of its own, including claims for attorneys fees or to file dispositive motions except by express leave of this court.

The Court believes that amicus status would afford proposed intervenors sufficient opportunity to ensure that their concerns for a deliberate designation process are fully considered by this Court without adding unnecessary volume of pleadings or lengthening these proceedings.

IT IS THEREFORE ORDERED THAT:

(1) Apache County and White Sands Forest Products, Inc. Motion to Intervene [DOC # 2] is denied.

(2) State of Arizona's Motion to Intervene [DOC # 10] is denied.

(3) All three parties are granted *amicus* status and may only file responsive pleadings with this court and file memoranda addressing the positions taken by plaintiff and defendants in any dispositive motions filed by those parties. Applicants will not be allowed to bring affirmative claims of their own, including attorneys fees or to file dispositive motions except by express leave of the court.